Opinion by Judge GRABER; Dissent by Judge BYBEE.
OPINION
GRABER, Circuit Judge:
Plaintiff Kathleen M. Ah Quin contends that her employer, Defendant County of Kauai Department of Transportation, discriminated against her because she is a woman. While pursuing this action, however, Plaintiff filed for Chapter 7 bankruptcy protection and initially failed to list this action in her bankruptcy schedules. The district court held that judicial estoppel prohibits her from proceeding and, therefore, granted summary judgment to Defendant. We hold that the district court applied the wrong legal standard in determining whether Plaintiffs bankruptcy omission was “mistaken” or “inadvertent.” Accordingly, we vacate the judgment and remand for further proceedings.
FACTUAL AND PROCEDURAL HISTORY
Plaintiff initiated this employment-discrimination action on November 10, 2008. She alleges that, because of her gender, Defendant reduced her work hours and denied her full-time status, in violation of various discrimination statutes and under the common law. On December 18, 2009, the district court denied Defendant’s motion for summary judgment on the merits. The court scheduled the case for a jury trial in April 2010.
Meanwhile, Plaintiff had obtained bankruptcy protection. Represented by a different lawyer than her lawyer in this case, Plaintiff filed for Chapter 7 bankruptcy on April 4, 2009. A debtor must list all pending lawsuits in the bankruptcy schedules, but Plaintiff checked the box “None” next to this line item: “List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case:” (Emphasis omitted.) At a bankruptcy hearing, Plaintiff testified that she had listed all of her assets and that the answers in her petition and schedules are “true and correct.” She did not mention this pending action. During a colloquy concerning her husband’s losing his job, Plaintiff responded to a question about whether she had a claim by saying: “No. No.” [1] On September 1, 2009, the bankruptcy court issued an order of discharge and closed the case.
At some point, Plaintiffs lawyer in this case became aware of the potential effect of Plaintiffs bankruptcy proceeding. At a settlement conference on December 21, 2009, Plaintiffs lawyer informed Defendant of Plaintiffs bankruptcy filing.
On December 29, 2009, Defendant wrote a letter to the district court setting forth *270 the position that it could move to dismiss the action under the doctrine of judicial estoppel. The next day, the district court vacated all dates and deadlines, and it scheduled a status conference for January 14, 2010.
On January 13, 2010, Plaintiff moved to reopen her bankruptcy case and to set aside the discharge. The motion, accompanied by declarations from her bankruptcy lawyer’s staff and from Plaintiff, explained that Plaintiff had never disclosed the pending lawsuit to her bankruptcy lawyer or his staff and that Plaintiffs failure to list the lawsuit as an asset stemmed from Plaintiffs misunderstanding of what she was required to do. The bankruptcy court reopened the case the same day. Plaintiff amended her bankruptcy schedules to list this pending claim as an asset.
On February 10, 2010, Defendant filed a motion for summary judgment in the discrimination action, on the ground that judicial estoppel prohibits Plaintiff from proceeding. The district court agreed and granted summary judgment in an order dated April 1, 2010. Plaintiff timely appeals.
On June 20, 2010, the bankruptcy trustee filed a report that abandoned the trustee’s interest in the pending discrimination action. Plaintiffs unsecured creditors did not object to that action by the trustee. On July 21, 2010, the bankruptcy court closed the reopened case.
STANDARDS OF REVIEW
We review de novo a grant of summary judgment. Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir.2001). We review “the district court’s application of the doctrine of judicial estoppel to the facts of [a] case for an abuse of discretion.” Id. “The district court ... necessarily abuses its discretion when it bases its decision on an erroneous legal standard.... ” Farris v. Seabrook, 677 F.3d 858, 864 (9th Cir.2012) (internal quotation marks omitted).
DISCUSSION
“[J]udieial estoppel is an equitable doctrine invoked by a court at its discretion.” New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal quotation marks omitted). “[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.” Id. at 749-50, 121 S.Ct. 1808 (citation and internal quotation marks omitted).
Although judicial estoppel is “probably not reducible to any general formulation of principle, ... several factors typically inform the decision whether to apply the doctrine in a particular case.” Id. at 750, 121 S.Ct. 1808 (citations and internal quotation marks omitted). “First, a party’s later position must be ‘clearly inconsistent’ with its earlier position.” Id. “Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party’s earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.” Id. (internal quotation marks omitted). “A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.” Id. at 751, 121 S.Ct. 1808. “In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine’s *271 application in specific factual contexts.” Id.
In the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action. See, e.g., Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir.1993) (“Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively.”); Hay v. First Interstate Bank of Kalispell, N.A., 978 F.2d 555, 557 (9th Cir.1992) (holding that “[fjailure to give the required notice [to the bankruptcy court] estops [the plaintiff-debtor] and justifies the grant of summary judgment to the defendants”). The reason is that the plaintiff-debtor represented in the bankruptcy case that no claim existed, so he or she is estopped from representing in the lawsuit that a claim does exist. That basic rule comports fully with the Supreme Court’s decision in New Hampshire: (1) the positions are clearly inconsistent (“a claim does not exist” vs. “a claim does exist”); (2) the plaintiff-debtor succeeded in getting the first court (the bankruptcy court) to accept the first position; and (3) the plaintiff-debtor obtained an unfair advantage (discharge or plan confirmation without allowing the creditors to learn of the pending lawsuit). The general rule also comports fully with the policy reasons underlying the doctrine of judicial estoppel: to prevent litigants from playing “fast and loose” with the courts and to protect the integrity of the judicial system. New Hampshire, 532 U.S. at 749-50, 121 S.Ct. 1808.
Of particular relevance here, though, the Supreme Court held in New Hampshire, that “it may be appropriate to resist application of judicial estoppel when a party’s prior position was based on inadvertence or mistake.” 532 U.S. at 753, 121 S.Ct. 1808 (internal quotation marks omitted). We have not addressed the effect of an inadvertent or mistaken omission from a bankruptcy filing, but several of our sister circuits have. Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1157 (10th Cir.2007); Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286-87 (11th Cir.2002); Browning v. Levy, 283 F.3d 761, 776 (6th Cir.2002); Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 206 (5th Cir.1999). Those courts generally have interpreted this factor narrowly. The courts have asked not whether the debtor’s omission of the pending claim from the bankruptcy schedules was inadvertent or mistaken; instead, they have asked only whether the debtor knew about the claim when he or she filed the bankruptcy schedules and whether the debtor had a motive to conceal the claim. See, e.g., Eastman, 493 F.3d at 1157 (“Where a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at times sub silentio, infer deliberate manipulation.”). This interpretation of “inadvertence” is narrow in part because the motive to conceal claims from the bankruptcy court is, as several courts have explained, nearly always present. Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 601 (5th Cir.2005); Coastal Plains, 179 F.3d at 212-13.
Here, the district court applied that narrow interpretation. Defendant argued repeatedly to the district court that, to overcome Plaintiffs inadvertence argument, all it had to show was that Plaintiff (1) knew of her claim and (2) had a motive to conceal the claim from the bankruptcy court. Defendant argued that the doctrine of judicial estoppel “should be and must be *272 applied” to Plaintiffs circumstances. The district court appeared to adopt Defendant’s argument. It reasoned: “I think the Court is bound to apply that law to the circumstances we have here and accordingly, summary judgment will be entered in favor of the defense.”[2] (Emphasis added.) The district court’s belief that it was bound to preclude Plaintiff from bringing her discrimination claim is mistaken and fundamentally at odds with equitable principles. Judicial estoppel is a discretionary doctrine, applied on a case-by-case basis. See New Hampshire, 532 U.S. at 751, 121 S.Ct. 1808 (refusing to “establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel”). A court is not “bound” to apply judicial estoppel, particularly when “a party’s prior position was based on inadvertence or mistake.”[3] Id. at 753, 121 S.Ct. 1808 (internal quotation marks omitted).
The court held that Plaintiffs bankruptcy filing was not “inadvertent” because, as Plaintiff concedes, she knew about the existence of this action when she filed for bankruptcy and because, as is true in practically all bankruptcy cases, Plaintiff had a motive to conceal the claim: keeping any potential proceeds from creditors.
The parties dispute whether the district court applied the correct legal standard when it found that Plaintiffs omission was not a result of inadvertence or mistake. See, e.g., Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC, 692 F.3d 983, 992 (9th Cir.2012) (holding that, when reviewing applications of judicial estoppel, we first must determine “whether the trial court identified the correct legal rule”). The starting point for our analysis is that our cases have not addressed the effect of an inadvertent or mistaken omission from a bankruptcy filing.[4] Many of the dissent’s arguments hinge on its repeated assertions that our previous cases have already answered this question, dissent at 279-80, 282-86, despite the fact that not one of our previous cases has even considered it. We are unwilling to glean the legal standard for what constitutes “inadvertence or mistake” in a bankruptcy filing from cases that plainly did not concern that factor. As explained below, we agree with Plaintiff that the district court erred in applying the narrow interpretation of “inadvertence” because, in the circumstances, that interpretation is too stringent.
A key factor is that Plaintiff reopened her bankruptcy proceedings and filed amended bankruptcy schedules that properly listed this claim as an asset. When a plaintiff-debtor has not reopened bankruptcy proceedings, a narrow exception for good faith is consistent with New Hampshire and with the policies animating the doctrine of judicial estoppel. The three primary New Hampshire factors are still met (inconsistency, bankruptcy court accepted the contrary position, to the debt- or’s unfair advantage). And, as courts re *273 peatedly stress, the importance of Ml disclosure in bankruptcy proceedings “cannot be overemphasized.” Coastal Plains, 179 F.3d at 208; see also, e.g., Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir.1996) (“[T]he importance of full and honest disclosure cannot be overstated.”); Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir.1988) (holding that “we cannot overemphasize the debtor’s obligation” to provide Ml disclosure). In sum, given the strong need for Ml disclosure in bankruptcy proceedings and the fact that the plaintiff-debtor received an unfair advantage in the bankruptcy court, it makes sense to apply a presumption of deliberate manipulation. See Eastman, 493 F.3d at 1159 (“That he well knew of his pending lawsuit and simply did not disclose it to the bankruptcy court is the only reasonable inference to be drawn from the evidence.”). But where, as here, the plaintiff-debtor reopens bankruptcy proceedings, corrects her initial error, and allows the bankruptcy court to re-process the bankruptcy with the Ml and correct information, a presumption of deceit no longer comports with New Hampshire.
Along with most of our sister circuits, we have held that — at least where file plaintiff-debtor does not claim inadvertence or mistake — the reopening of a bankruptcy case is generally irrelevant to the analysis of judicial estoppel. Eastman, 493 F.3d at 1160; Barger v. City of Cartersville, 348 F.3d 1289, 1297 (11th Cir.2003); Burnes, 291 F.3d at 1288; Hamilton, 270 F.3d at 784;[5] Oneida, 848 F.2d at 418. That is, even if a plaintiff-debtor corrects the initial mistake and no longer receives a benefit in bankruptcy court, judicial estoppel still applies — wiping out a potentially meritorious action against an unrelated third party. Courts have provided three primary justifications for the rule.
First, as noted above, supra pp. 272-73, Ml disclosure in bankruptcy is essential to the functioning of the bankruptcy system, a fact that “cannot be overemphasized.” Coastal Plains, 179 F.3d at 208. Second, the initial disclosures failed to tell the creditors about the lawsuit. See, e.g., Hamilton, 270 F.3d at 784 (holding that an initial “discharge of debt by a bankruptcy court, under these circumstances, is sufficient acceptance to provide a basis for judicial estoppel, even if the discharge is later vacated”); Oneida, 848 F.2d at 418 *274 (“[The original bankruptcy plan] was informationally deficient, and not cured by the later modification. The original plan failed to alert the creditors to the possible financial benefits enuring to them upon the successful prosecution of the claim.” (footnote omitted)). Finally, and perhaps most importantly, courts have held that application of judicial estoppel is necessary in order to incentivize future debtors (and their lawyers) to provide full disclosure. In an oft-quoted passage, one court wrote:
The success of our bankruptcy laws requires a debtor’s full and honest disclosure. Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors’ assets.
Bumes, 291 F.3d at 1288.
As the Seventh Circuit has recognized in unanimous opinions, Biesek v. Soo Line R.R. Co., 440 F.3d 410 (7th Cir.2006), and Cannon-Stokes v. Potter, 453 F.3d 446 (7th Cir.2006), and as Judge Stapleton recognized in dissent in Oneida, those justifications do not withstand scrutiny. First, and perhaps most importantly, once a plaintiff-debtor has amended his or her bankruptcy schedules and the. bankruptcy court has processed or re-processed the bankruptcy with full information, two of the three primary New Hampshire factors are no longer met. Although the plaintiff-debtor initially took inconsistent positions, the bankruptcy court ultimately did not accept the initial position. The Supreme Court put it well: “Absent success in a prior proceeding, a party’s later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity.” New Hampshire, 532 U.S. at 750-51, 121 S.Ct. 1808 (citation and internal quotation marks omitted).
Moreover, the plaintiff-debtor did not obtain an unfair advantage.[6] Indeed, the plaintiff-debtor obtained no advantage at all, because he or she did not obtain any benefit whatsoever in the bankruptcy proceedings. See Dunmore v. United States, 358 F.3d 1107, 1113 n. 3 (9th Cir.2004) (holding that the district court’s allowing the plaintiff-debtor to reopen his bankruptcy case, thereby preventing the plaintiff-debtor “from having his cake and eating it too,” “was a permissible alternative to judicial estoppel that prevented [him] from deriving an unfair advantage if not es-topped”). Cases such as Oneida, 848 F.2d at 418, which justify the application of judicial estoppel because the creditors were not told initially of the pending action are wrong for two reasons: The creditors *275 are told eventually, and the doctrine of judicial estoppel is concerned with the integrity of the courts, not the effect on parties. See, e.g., Ryan, 81 F.3d at 360 (“Judicial estoppel is intended to protect the courts rather-than the litigants.” (internal quotation marks omitted)).
Next, there is some intuitive appeal to the deterrence justification — punishing wrongdoers will incentivize future debtors to list their assets exhaustively. But that justification is a very awkward fit for the doctrine of judicial estoppel. Judicial estoppel typically operates to protect the integrity of the judicial system with respect to the particular litigant in front of the court. In the context of judicial estoppel, it is odd to punish a present litigant merely in order to discourage inconsistent positions by future litigants. Moreover, the courts that have mentioned this justification phrase it in terms not of protecting the courts but of promoting the efficient operation of the bankruptcy system. That aim — protecting the bankruptcy system— differs from the goal of judicial estoppel— protecting the integrity of the courts. To the extent that the bankruptcy system lacks adequate protections, that is a shortcoming not of the court system, but of the bankruptcy laws.
In any event, the bankruptcy system already provides plenty of protections. The bankruptcy court or trustee may reopen a case if it uncovers deception, as occurred in Hamilton, 270 F.3d at 781. (Here, Plaintiff voluntarily initiated the reopening.) A case may be reopened even if it has long been closed. 11 U.S.C. § 350(b); Fed. R. Bankr.P. 5010. A bankruptcy court or trustee can impose sanctions, including denial of a discharge. Fed. R. Bánkr.P. 9011. And, of course, a case may be referred to the United States Attorney’s office for criminal prosecution. Bee 18 U.S.C. § 152 (criminalizing the concealment of assets, false oaths, and claims). “The availability of such a course of action would in most cases adequately deter nondisclosure.” Oneida, 848 F.2d at 423 (Stapleton, J., dissenting).
Finally, the application of judicial estoppel in these circumstances operates to the detriment primarily of innocent creditors and to the benefit of only an alleged bad actor. When a plaintiff-debtor amends his or her bankruptcy schedules to include the previously omitted lawsuit, the creditors may now stake a claim in that lawsuit. By not permitting 'the civil action to go forward, the creditors lose out on a potential recovery. See Cannon-Stokes, 453 F.3d at 448 (“Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor’s deceit.”); Oneida, 848 F.2d at 422 (Stapleton, J., dissenting) (“The [Bankruptcy] Code’s disclosure requirements are intended to protect those creditors whom a debtor’s failure to disclose hidden assets would prejudice. A fortiori, a court’s response to nondisclosure should do likewise.”).
Perversely, the only “winner” in this scenario is the alleged bad actor in the estopped lawsuit. See Oneida, 848 F.2d at 422-23 (Stapleton, J., dissenting) (“The only real winner in the case as decided is the [defendant], whom the court has relieved of the responsibility of justifying its allegedly improper behavior.”). If Defendant here did, in fact, discriminate against Plaintiff,[7] it will not have to pay the consequences of its actions, for the entirely unrelated reason that Plaintiff happened to file for bankruptcy and, possibly due to inadvertence, happened to omit the claim from her initial schedules. Further, because the application of judicial estoppel *276 does not look to the nature of the underlying claim, the alleged bad actor could be someone who clearly does not warrant a windfall (e.g., someone who physically assaulted the plaintiff and badly injured him or her). It seems hard to justify a policy that takes money from innocent third-party creditors and gives it, for example, to a violent criminal. See Oneida, 848 F.2d at 420 (Stapleton, J., dissenting) (“[The debt- or’s] unsecured creditors ... should not be required to contribute towards a windfall for an alleged wrongdoer.”).
Writing for a unanimous panel of the Seventh Circuit, Judge Easterbrook summarized:
Judges understandably favor rules that encourage full disclosure in bankruptcy. Yet pursuing that end by applying judicial estoppel to debtors’ self-contradiction would have adverse effects on third parties: the creditors. [The debt- or’s] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his [statutory] claim would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what [the debt- or] has been doing behind their backs. Creditors gypped by [the debtor’s] maneuver are hurt a second time by the district judge’s decision. Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application. Instead of vaporizing assets that could be used for the creditors’ benefit, district judges should discourage bankruptcy fraud by revoking the debtors’ discharges and referring them to the United States Attorney for potential criminal prosecution.
Biesek, 440 F.3d at 413.
The analysis by the Seventh Circuit and Judge Stapleton supports our conclusion that, when the plaintiff-debtor has reopened the bankruptcy proceedings and has corrected the initial filing error, the narrow interpretations of “mistake” and “inadvertence” do not apply. If Plaintiffs bankruptcy omission was mistaken, the application of judicial estoppel in this case would do nothing to protect the integrity of the courts, would enure to the benefit only of an alleged bad actor, and would eliminate any prospect that Plaintiffs unsecured creditors might have of recovering.[8]
In these circumstances, rather than applying a presumption of deceit, judicial estoppel requires an inquiry into whether the plaintiffs bankruptcy filing was, in fact, inadvertent or mistaken, as those terms are commonly understood. Courts must determine whether the omission occurred by accident or was made without intent to conceal. The relevant inquiry is not limited to the plaintiffs knowledge of the pending claim and the universal motive to conceal a potential asset — though those are certainly factors. The relevant inquiry is, more broadly, the plaintiffs subjective *277 intent when filling out and signing the bankruptcy schedules.
We recognize that, by adopting the ordinary understanding of “mistake” and “inadvertence” in this context, we differ from the test articulated by most of our sister circuits — whether the plaintiff knew of the claims and had a motive to conceal them. Our review of our sister circuits’ case law, however, suggests that their application of the rule has not been as rigid as one would expect. We read many of those cases as implicitly recognizing the harsh results to which the narrow interpretation leads and avoiding that harsh result.
In Browning, 283 F.3d at 776, for instance, the Chapter 11 bankruptcy plan, ultimately confirmed by the bankruptcy court, conferred all benefits from the lawsuit to the creditors only. The Sixth Circuit held that, because all benefits would go to the creditors, the plaintiff-debtor had lacked a motive to conceal the lawsuit. Id. But one would expect the inquiry into motive to be focused on the time of omission, not viewed from the perspective of the conclusion of the bankruptcy proceedings. The plaintiff-debtor almost certainly had a motive to conceal; it just turned out that the bankruptcy court’s ultimate resolution of the case did not benefit the plaintiff-debtor. See also Eubanks v. CBSK Fin. Grp., Inc., 385 F.3d 894, 897 (6th Cir.2004) (holding that judicial estoppel did not apply because the debtor attempted to disclose the claims to the bankruptcy court); Barger, 348 F.3d at 1298 (Barkett, J., dissenting) (stating that judicial estoppel is not warranted because the debtor disclosed the claims to the bankruptcy court, albeit imperfectly); Ryan, 81 F.3d at 363-64 (concluding that the debtor did not act in bad faith for several reasons, including that the confirmed bankruptcy plan conferred 91% of the benefit to the creditors); cf. Stallings v. Hussmann Corp., 447 F.3d 1041, 1049 (8th Cir.2006) (holding that judicial estoppel did not apply because the bankruptcy court dismissed the case on the trustee’s motion and. therefore never discharged the debt):.
The court in Ryan, 81 F.3d at 364, explained:
[Pjolicy considerations militate against adopting a rule that the requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding. Such a rule would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies. While we by no means denigrate the importance of full disclosure or condone nondisclosure in bankruptcy proceedings, we are unwilling to treat careless or inadvertent nondisclosures as equivalent to deliberate manipulation when administering the “strong medicine” of judicial estoppel.
We agree. But, rather than adopting a narrow 'interpretation of “mistake” and “inadvertence” and applying it broadly, we believe that an ordinary interpretation of those terms in these circumstances is more consistent with the Supreme Court’s decision in New Hampshire, better reflects the equitable considerations underlying the doctrine, and will be less .confusing for courts to apply. ■
Turning to the evidence here, we find factual support for a conclusion either of mistake and inadvertence, or of deceit. On the one hand, Plaintiff filed an affidavit in which she swore that, when she reviewed the bankruptcy schedules, she did not think that she had to disclose her pending lawsuit because the bankruptcy schedules were “vague.” Also, in her bankruptcy schedules, she listed her lawyer as a creditor - for $5,000; she claims *278 that, if she “was truly seeking to hide [the] lawsuit from the bankruptcy court,” she would not have listed that lawyer. (Indeed, it was that listing that ultimately caused the reopening of the bankruptcy case and Defendant’s raising of judicial estoppel.) Contrary to Defendant’s repeated assertion that Plaintiff was “caught,” it was Plaintiffs counsel who first raised the bankruptcy to Defendant’s attention at a settlement conference. On the other hand, Plaintiffs testimony at the bankruptcy hearing suggests that she should have been aware that a pending claim is relevant. Similarly, the timing of the reopening of the bankruptcy case seems inculpatory: She did not move to reopen the bankruptcy case until after Defendant here raised the issue of judicial estoppel. But viewing the evidence in the light most favorable to Plaintiff, and thus crediting her affidavit, T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass’n, 809 F.2d 626, 630-31 (9th Cir.1987), her bankruptcy filing was inadvertent.
The dissent takes issue with our analysis of the record. The dissent argues that, after the colloquy with the bankruptcy court concerning her husband’s possible legal claims, Plaintiff must have known that she was required to disclose her own claim. Dissent at 287-88. Using that premise, the dissent concludes that Plaintiffs affidavit is a sham. Id. at 289-90.
We firmly disagree. Because this case reaches us after the entry of summary judgment for Defendant, we are required to interpret the facts in the light most favorable to Plaintiff. T.W. Elec., 809 F.2d at 630-31. The dissent has done an excellent job of marshaling the evidence that suggests that Plaintiff was lying, including the colloquy with the bankruptcy court. But, in order to hold that Plaintiffs affidavit — which concerns the quintessential^ personal fact of state of mind — is a sham, the content of the affidavit must be “ ‘blatantly contradicted by the record.’” Dissent at 289 (quoting Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)). A full transcript of the colloquy, quoted by the dissent at 287-88, is nothing if not confusing. We agree that one could interpret the colloquy as having put Plaintiff “on notice that a lawsuit was relevant,” id. at 287, but the colloquy is far from the smoking gun that the dissent portrays it to be. We easily conclude that the muddled colloquy is insufficient to hold, at this procedural stage, that Plaintiffs affidavit is a sham.[9]
*279 On remand, after such further factual development as may be appropriate, the district court might find that Plaintiffs affidavit is not trustworthy and that Plaintiffs omission was not mistaken or inadvertent. Alternatively, the court might find that Plaintiffs omission was mistaken or inadvertent. We cannot make that determination on this record. Because the district court applied the wrong legal standard, we vacate the district court’s grant of summary judgment and remand for application of the correct legal standard. Farris, 677 F.3d at 864.
VACATED and REMANDED. Costs on appeal awarded to Plaintiff-Appellant.

. The parties dispute the significance of that colloquy. In our view, the most plausible reading is that Plaintiff was referring to a claim for her husband’s loss of work, not to a claim in general. But we do not resolve that factual dispute.

. Whether the district court thought that it was “bound'' by Hamilton or by out-of-circuit case law, it was mistaken. In Hamilton, we were not presented with an opportunity to address inadvertence or mistake. See infra note 6.

. Consider, for example, a litigant who is not represented by counsel or who speaks English as a second language and fails to include a claim on her bankruptcy schedule because she does not understand that she was required to do so. The narrow rule applied by the district court would punish the litigant for making an honest mistake and would leave no room for equitable considerations.

.The district court turned to Tenth Circuit authority to interpret the meaning of “inadvertence or mistake.” The district court thus seems to have recognized that our circuit had not defined these terms in the present context.

. In Hamilton, it was palpable from the record that the plaintiff-debtor's bankruptcy omission was intentional in every sense of the term. See 270 F.3d at 781. Hamilton sought recovery from an insurance company for water damage and loss of allegedly stolen property following a partial flood of his house. Id. at 780. The insurance company, "apparently suspicious” of Hamilton’s insurance claim, initiated an investigation into its validity. Id. Hamilton enlisted lawyers to pressure the insurance company to pay Hamilton quickly, claiming that the insurer was acting in bad faith and threatening litigation. Id. at 781. Meanwhile, Hamilton filed for bankruptcy. The insurer’s investigation revealed that Hamilton was "probably responsible” for the damage and theft and that he had violated the insurance policy’s concealment-of-fraud provision. Less than two weeks after the denial, Hamilton filed his bankruptcy schedules, listing a residential vandalism loss but not his bad faith claim against the insurer. The bankruptcy trustee requested information from Hamilton regarding insurance recovery, but Hamilton replied with a non-responsive letter. The trustee successfully moved to reopen the bankruptcy case on the grounds of "bad faith, lack of truthfulness under oath, and failure to cooperate.” Id. Hamilton then filed a suit against his insurer, which was dismissed based on judicial estoppel; we affirmed. Critically, Hamilton did not argue that his failure to disclose was based on inadvertence or mistake, and our opinion in Hamilton did not mention, define, or consider the relevance of inadvertence or mistake.

. Labeling them “recycled arguments,” the dissent asserts that these positions are “plainly foreclosed by Hamilton.” Dissent at 285. We disagree. In determining whether to apply judicial estoppel, the district court must consider all factors — including inadvertence or mistake. Nothing in Hamilton forecloses the possibility that a court could conclude that, whereas an intentional omission (as in Hamilton) would result in an unfair advantage, an inadvertent or mistaken omission might not be unfair. Similarly, nothing in Hamilton forecloses the possibility that a court could reach a different conclusion about the effect of the bankruptcy court’s initial acceptance of the plaintiff-debtor’s position. Indeed, we held in Hamilton that the initial “discharge of debt by a bankruptcy court, under these circumstances, is sufficient acceptance to provide a basis for judicial estoppel.” 270 F.3d at 784 (emphasis added). If the circumstances are materially different (i.e., where the plaintiff-debtor’s omission was inadvertent or mistaken, instead of intentional), Hamilton does not foreclose a different result.

. We express no view on the merits of Plaintiffs’ claims.

. Here, the bankruptcy trustee decided not to pursue the claim and abandoned it, so the right to bring this action reverted to Plaintiff. Plaintiff's unsecured creditors did not object to that action by the trustee. Although the creditors may not receive any benefit from this action, that was the choice of the creditors and the trustee. The important point is that the trustee and the creditors had a full opportunity to pursue this avenue. Moreover, we are not aware of anything that would prevent Plaintiff or her creditors from moving to reopen the bankruptcy proceedings to allow the creditors to benefit. Cf. Hay, 978 F.2d at 557 ("We make no ruling on the rights of the creditors themselves to move to reopen the bankruptcy proceedings.”).

. Here are Plaintiff's statements during the colloquy: " 'My husband lost his job due to workplace violence' " 'Due to workplace violence. It wasn’t his fault. We’re fighting it — or trying to.' " 'What?' " 'We haven’t gone — ’ " ' — and done anything legally yet.' " 'It's on my husband.’ " 'Yea, but — ’ " 'No. No.’ " 'No, yeah.’ ” See dissent at 287 (quoting colloquy). Nothing in those statements suggests that Plaintiff necessarily gained knowledge about her legal requirements.
The dissent emphasizes many statements during the colloquy, but only two concern legal requirements. Neither of those statements put Plaintiff clearly on notice. First, the court said, "So you need to list that claim in the schedules [.]” The phrase "that claim” refers, of course, to her husband’s claim. Moreover, the immediately following lines of the transcript show Plaintiff's attorney interrupting and Plaintiff asking, simply, “What?” The court never repeated its statement. In other words, the dissent argues that we must infer blatant knowledge from a statement that the court made about a different claim that Plaintiff apparently did not even hear or understand.
Second, the court’s final statement was: "So you don’t need to list the exclusions.” Again, "that exclusion” refers to her husband’s claim. Moreover, the statement tells Plaintiff that she did not need to list the claim. We decline to infer blatant knowledge of the opposite conclusion about a claim never discussed by the bankruptcy court. The dissent *279 offers no additional explanation as to why the colloquy is so overwhelmingly persuasive that no reasonable lay person could have failed to grasp the legal requirement to list the unmentioned claim.