NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

AUG 29 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

In re: WVSV HOLDINGS, LLC,

Debtor,

_____

WVSV HOLDINGS, LLC,

Plaintiff-Appellant,

v.

10K, LLC; LEO R. BEUS; ANNETTE
BEUS; PAUL GILBERT; SUSAN
GILBERT; RANDY STOLWORTHY;
KARI STOLWORTHY,

Defendants-Appellees.

No. 21-16874

D.C. No. 2:20-cv-01927-JJT

MEMORANDUM*

In re: WVSV HOLDINGS, LLC,

Debtor,

_____

WVSV HOLDINGS, LLC,

Plaintiff-Appellee,

v.

10K, LLC; LEO R. BEUS; ANNETTE
BEUS; PAUL GILBERT; SUSAN
GILBERT; RANDY STOLWORTHY;
KARI STOLWORTHY,

Defendants-Appellants.

No. 21-16952

D.C. No. 2:20-cv-01927-JJT

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted November 16, 2022
Phoenix, Arizona

Before:  BYBEE, OWENS, and COLLINS, Circuit Judges.
Dissent by Judge COLLINS

This case is the latest in a protracted litigation between two real-estate companies over a 13,000-acre tract in Arizona.  Defendant 10K, LLC contracted to sell the land in 2002.  The deal collapsed, and 10K's manager—a separate firm—sold the plot to Plaintiff WVSV Holdings, LLC.  10K's members challenged that sale in state court, precipitating a 16-year quagmire.  In 2012, nine years after the inception of 10K's suit, WVSV filed Chapter 11 bankruptcy.  10K was by far its largest creditor.  WVSV's reorganization plan was confirmed two years later, providing in part for the preservation of "all claims of 10K against the Debtor . . . [and vice versa] brought in the State Court Litigation."

In 2019, judgment was entered for WVSV on the land sale.  A little over a year later, it sued Defendants in state court, claiming, *inter alia*, wrongful institution of civil proceedings ("WICP").[1]  WVSV asserted that 10K's members,

---

[1] WVSV's complaint also includes two declaratory relief claims (which the parties jointly move to dismiss, and which we grant); a slander of title claim (absent from its opening brief, and which we deem waived); and a claim for aiding and abetting tortious conduct.  The latter claim rests on WICP, so we analyze both together.

2

indignant over losing the contract, embroiled it in a decade and a half of sham litigation. Since Arizona law makes winning the wrongful suit a condition of pleading WICP, WVSV's 2020 action was the earliest that it could file. *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 758 P.2d 1313, 1319 (Ariz. 1988). Defendants removed to bankruptcy court, 28 U.S.C. § 1452, and sought dismissal and attorneys' fees. Claiming jurisdiction to determine whether WVSV's suit flouted its confirmed plan, the bankruptcy court held that it did, dismissed, and awarded Defendants their fees. WVSV appealed to the district court, which affirmed the dismissal but reversed the fee award. Both sides cross-appeal from that judgment. We have jurisdiction under 28 U.S.C. § 158(d) and affirm.

1. Based on its authority to interpret WVSV's plan, the bankruptcy court asserted jurisdiction to verify whether the WICP claim was property of the estate, which should have been scheduled as an asset and was now waived. Reviewing de novo, we agree. "Bankruptcy courts have subject matter jurisdiction over proceedings 'arising under title 11 . . . or related to cases under title 11.'" *Wilshire Courtyard v. Cal. Franchise Tax Bd.* (*In re Wilshire Courtyard*), 729 F.3d 1279, 1285 (9th Cir. 2013) (quoting 28 U.S.C. § 1334(b)). In determining whether a *post-confirmation* proceeding is sufficiently "related to" a bankruptcy case to confer jurisdiction, we ask if it "affect[s] the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Id.* at 1289

3

(citation omitted) (alteration in original).

Here, as the bankruptcy court explained, the central issues are whether WVSV's WICP claim was property of the estate and, if so, whether failure to schedule it operates as a waiver. These issues raise a "substantial question of bankruptcy law" that "requir[es] interpretation of the confirmed plan" and a determination of what constitutes "property" under the Bankruptcy Code. *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 762 (9th Cir. 2022) (citation omitted). Considering these factors and taking a "holistic look at 'the whole picture,'" we hold that the bankruptcy court had jurisdiction under Section 1334(b) to decide the limited issues that it did. *Id*. (quoting *Wilshire Courtyard*, 729 F.3d at 1289).

2. That brings us to the merits. "We review *de novo* the district court's decision on appeal from a bankruptcy court," *United States v. Warfield* (*In re Tillman*), 53 F.4th 1160, 1166 (9th Cir. 2022), and the bankruptcy court's application of judicial estoppel for abuse of discretion, *Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013). The bankruptcy court abuses its discretion if, *inter alia*, it applies the wrong legal standard. *Id*. We find the bankruptcy court did not err in defining estate property as it did and so affirm.

Determining what qualifies as property for bankruptcy purposes requires navigating a delicate intersection of state and federal law. "Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979).

4

Thus, in examining causes of action as property, we have "look[ed] to state law" to establish the elements of a claim and when it accrues. *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001). But that is not the whole story. "[The] definition of property of the estate has been broadly construed to encompass a debtor's contingent interest . . ., even if that interest is reliant on future contingencies that have not occurred as of the filing date." *Anderson v. Rainsdon* (*In re Anderson*), 572 B.R. 743, 747 (B.A.P. 9th Cir. 2017). To decide whether to treat post-petition claims as estate property, the Supreme Court has instructed us to determine whether such claims are "sufficiently rooted in the pre-bankruptcy past." *Segal v. Rochelle*, 382 U.S. 375, 380 (1966); *see also Jess v. Carey* (*In re Jess*), 169 F.3d 1204, 1208 (9th Cir. 1999).

Under Arizona law, WVSV could not have sued 10K for WICP until 2019. *Frey v. Stoneman*, 722 P.2d 274, 278 (Ariz. 1986). At that point, WVSV could assert all the elements of WICP, including a favorable judgment in the allegedly abusive litigation. But it is a question of bankruptcy law whether the unmatured claim was "sufficiently rooted" in pre-petition events to come into the estate. *Segal*, 382 U.S. at 380. We think that it was. At its bankruptcy, WVSV had satisfied all conditions to plead WICP, save for victory in the predicate suit. The conduct yielding this claim had been known to WVSV for a decade. And even if the state-court suit *had* terminated in its favor before the petition, the resulting

WICP claim would still have depended on winning some future action. The unmatured claim that WVSV knew of, no different from the counterfactual matured claim, was a contingent interest. Under Section 541, it should have been disclosed on WVSV's schedules. Based on its sound finding that WVSV's WICP claim was estate property, the bankruptcy court did not abuse its discretion by holding the unscheduled claim waived. *Ah Quin*, 733 F.3d at 271.

3. Finally, we agree with the district court that the bankruptcy court abused its discretion in granting 10K attorneys' fees. The award was granted under Ariz. Rev. Stat. § 12-341.01(A), which allows the victor to obtain fees in "any . . . action arising out of a contract." Here, 10K argues that the relevant contract was the land sale to WVSV. But the basis for the WICP claim sounded in tort, not contract. WVSV's claim was based on 10K's litigation conduct, and the Supreme Court of Arizona has held it is insufficient for Section 12-341.01(A) purposes that a contract exists "somewhere in the transaction." *Marcus v. Fox*, 723 P.2d 682, 684 (Ariz. 1986). Since the bankruptcy court's fee award rested on an erroneous reading of Arizona law, it was properly reversed by the district court.

**AFFIRMED.**

*WVSV Holdings, LLC v 10K, LLC*, Nos. 21-16874 & 21-16952

COLLINS, Circuit Judge, dissenting:

I agree with the majority that, under the applicable "close nexus" test, *see Wilshire Courtyard v. Cal. Franchise Tax Bd.* (*In re Wilshire Courtyard*), 729 F.3d 1279, 1287 (9th Cir. 2013), the bankruptcy court properly exercised jurisdiction to decide the limited issues that it did. But I disagree with the majority's resolution of the merits of those issues.

The central question is whether WVSV Holdings, LLC ("WVSV") is barred from asserting its state law claim for "wrongful institution of civil proceedings" against Defendants due to the fact that no such claim was listed in WVSV's schedules during its bankruptcy proceedings. The answer to that question is no.

Ordinarily, "[i]f a plaintiff-debtor omits a pending (or soon-to-be filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Ah Quin v. County of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013). However, "generally, a debtor has no duty to schedule a cause of action that did not accrue prior to bankruptcy." *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001); *see also* 11 U.S.C. § 541(a)(1) (stating that the estate's property generally includes, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case"). "To determine when a cause of action

accrues, we look to state law." *Cusano*, 264 F.3d at 947; *see also Butner v. United States*, 440 U.S. 48, 55 (1979) (holding that, for bankruptcy purposes, "[p]roperty interests are created and defined by state law"). In examining state law for this purpose, what matters is when "accrual has occurred for purposes of ownership," and not when the statute of limitations begins to run under "principles of discovery and tolling." *Cusano*, 264 F.3d at 947.

Only two claims in WVSV's removed complaint remain relevant here—WVSV's claim for "wrongful institution of civil proceedings" and its claim for aiding and abetting tortious conduct. *See* Mem. Dispo. at 2 n.1. A claim for "wrongful institution of civil proceedings" is the more technical name for a "malicious prosecution" claim based on an underlying civil matter, and for simplicity and convenience, I will use the latter term. *See Giles v. Hill Lewis Marce*, 988 P.2d 143, 145 n.1 (Ariz. Ct. App. 1999). As WVSV notes in its opening brief, its aiding and abetting claim is predicated on its malicious prosecution claim, and the accrual of the former claim therefore turns on the accrual of the latter claim.

Under Arizona law, "an essential element of a malicious prosecution claim is that the proceedings must have terminated in favor of the person against whom they were brought." *Nataros v. Superior Ct. of Maricopa Cnty.*, 557 P.2d 1055, 1057 (Ariz. 1976) (en banc) (footnote omitted). Accordingly, a "malicious

2

prosecution claim accrues when the prior proceedings have terminated in the defendant's favor." *Id*. Prior to that point, "there [is] no cause of action." *Id*. In this case, the relevant "prior proceedings" that are the subject of WVSV's malicious prosecution claim did not terminate in WVSV's favor until the mandate was issued in January 2019 with respect to the November 2018 final decision of the Arizona Court of Appeals. *See 10K, LLC v. WVSV Holdings, LLC*, 2018 WL 5904513 (Ariz. Ct. App. 2018). Thus, under Arizona law, the earliest that WVSV possessed its chose in action for malicious prosecution (and its related action for aiding and abetting) was January 2019.

The majority does not—and cannot—dispute that, under Arizona law, WVSV did not have any cause of action prior to January 2019. It follows from that premise that "accrual . . . occurred for purposes of ownership" in January 2019. *Cusano*, 264 F.3d at 947. Under our controlling decision in *Cusano*, that means that WVSV had no obligation to list these claims on its initial disclosure schedules. *Id*. And because these causes of action did not exist until well after WVSV's plan was confirmed, it is of no consequence that WVSV did not amend its schedules to list such claims prior to the confirmation of the plan. Moreover, it follows that, in not listing these claims in its disclosure schedules, WVSV did not make a representation that is inconsistent with its current assertion of the claims. There is thus no ground for finding that WVSV is judicially estopped on that basis,

3

*see New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), and the bankruptcy court abused its discretion in concluding otherwise. And, for the same reason, the bankruptcy court erred in holding that WVSV is limited to those claims that were preserved in the terms of the confirmation order.

The majority disregards our decision in *Cusano*, which requires us to give controlling weight to Arizona law on this point, and instead relies on a novel, overriding rule of federal bankruptcy law that the majority erroneously derives from *Segal v. Rochelle*, 382 U.S. 375 (1966). *Segal* recognized that there may be certain "interests" that, while still contingent in some respects at the time of the bankruptcy petition, are "sufficiently rooted in the pre-bankruptcy past" to count as "property" of the bankruptcy estate at the time of the bankruptcy petition. *Id*. at 380. But nothing in *Segal* or in our other cases applying it authorizes us to do what the majority has done here, which is to recognize, under federal law, property interests that simply do not exist under state law. *See id*. (holding that debtor's interest in tax refunds was "property" of estate even though refunds could not be claimed "until the end of the year," after the petition was filed; the core facts creating a contingent entitlement to the refunds had occurred before bankruptcy); *Jess v. Carey (In re Jess)*, 169 F.3d 1204, 1207–08 (9th Cir. 1999) (holding that attorney's interest in contingency fees for pre-petition work was a property interest because it was rooted in contract rights that had value on the day the petition was

4

filed); *Rau v. Ryerson* (*In re Ryerson*), 739 F.2d 1423, 1425 & n.1 (9th Cir. 1984) (holding that insurance district manager's contractual right to "accumulated value to which he was entitled upon termination or cancellation" of his appointment was "property" as of the filing of the bankruptcy petition; although termination occurred later, the contractual right had value and, in addition, "termination or cancellation of the appointment is an event certain to occur" at some point).

The majority contends that, under *Segal*, potential lawsuits that may or may not come into existence in the future are no more contingent or uncertain than *success* in a lawsuit that *has* come into existence. *See* Mem. Dispo. at 5–6. But the majority's analogy overlooks what, under *Cusano*, is a critical difference: the speculative future cause of action that has not yet accrued is not a property interest recognized under state law, while a cause of action that has accrued *is* a recognized property interest (despite the contingent risk and uncertainty as to its ultimate actual value). Here, the problem is not that the value of the property interest was contingent or uncertain at the filing of the petition; rather, it is that there was no property interest at all.

In addition to being contrary to *Cusano*, the majority's position is contrary to an overwhelming body of precedent that has explicitly rejected the view that un-accrued malicious prosecution claims belong to the bankruptcy estate. *See McAtee v. Morrison & Frampton, PLLP*, 512 P.3d 235, 239 (Mont. 2021) (rejecting

comparable judicial estoppel claim, holding that "McAtee's malicious prosecution claim, as premised on the civil fraud action, had not yet accrued at the time she filed her bankruptcy petition and cannot be deemed rooted in her pre-bankruptcy conduct"); *Vojnovic v. Brants*, 612 S.E.2d 621, 624 (Ga. Ct. App. 2005) (rejecting comparable judicial estoppel argument, because the debtor, who "filed for Chapter 7 bankruptcy on September 15, 1999," "did not have a viable malicious prosecution claim until January 2000, when the criminal case against her was ultimately dismissed"); *Jenkins v. A.T. Massey Coal Co.* (*In re Jenkins*), 410 B.R. 182, 193–94 (Bankr. W.D. Va. 2008) (rejecting a comparable judicial estoppel claim with respect to a malicious prosecution action, holding that, "[u]ndoubtedly, the interests considered property of the estate are expansive under § 541; however, this Court cannot support any position which would bring into the bankruptcy estate causes of action not existing as of the commencement of the case"); *Carroll v. Henry Cnty.*, 336 B.R. 578, 584 (N.D. Ga. 2006) ("The plaintiff's state law claims for false arrest and malicious prosecution are, likewise, not barred by judicial estoppel since those causes of action did not accrue until the termination of his criminal trial."); *Brunswick Bank & Trust Co.* (*In re Atanasov*), 221 B.R. 113, 117 (D.N.J. 1998) ("In the current case, the indictment was dismissed on May 10, 1993. Accordingly, as the bankruptcy petition was filed on February 2, 1993, the cause of action for malicious prosecution arose post-petition. The claim—brought

6

on May 9, 1995—simply was not an asset at the time the petition was filed. The analysis is that straightforward."). The one case cited by the parties that reaches a contrary conclusion, *Cole v. Pulley*, 468 N.E.2d 652 (Mass. App. Ct. 1984), is distinguishable, because it places dispositive weight on its state-law characterization of the "[s]uccessful termination" element of a malicious prosecution claim as being "in the nature of a threshold requirement" for filing suit and only "technically an element of the tort." *Id*. at 653. Arizona law does not follow that view: as explained earlier, Arizona law is clear that, prior to a successful termination of the predicate suit, "there [is] no cause of action" for malicious prosecution. *Nataros*, 557 P.2d at 1057.

Accordingly, I dissent from the majority's conclusion that federal law dictates that we deem a potential cause of action that does not yet exist under state law to be a "contingent interest" that, notwithstanding state law, counts as a sufficient property interest that must be listed on the debtor's schedules and that passes to the bankruptcy estate under § 541(a)(1) of the Bankruptcy Code. Because in my view the claims at issue here were not property of the bankruptcy estate, there was no obligation for WVSV to list them on its disclosure schedules. And because there was no obligation to disclose the claims, judicial estoppel does not attach from the failure to do so. As a result, the bankruptcy court erred in holding that WVSV was barred from litigating its claims.

Because I would reverse the district court's judgment in favor of Defendants, I would dismiss as moot Defendants' cross-appeal regarding the district court's ruling on their request for attorneys' fees. *See Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 409 (9th Cir. 1992). Under my resolution of the case, the limited jurisdiction that the bankruptcy court correctly asserted would be exhausted. I would then leave it to the district court to determine on remand whether the case should be remanded back to state court. Because the majority instead affirms the judgment, I respectfully dissent.