# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 8, 2015        Decided July 12, 2016

No. 14-7190

SANDRA MARSHALL,
APPELLANT

v.

HONEYWELL TECHNOLOGY SYSTEMS INC, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-02502)

*JoAnn Patricia Myles* argued the cause and filed the brief for appellant.

*Leslie Paul Machado* argued the cause for appellees. With him on the brief were *Sarah E. Moffett*, *Paul W. Mengel III*, *Julia D. Di Vito*, *Zachary S. Stinson*, *M. Ginger McCauley*, and *John B. Flood*. *Isaias I. Alba* entered an appearance.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

Dissenting opinion filed by *Circuit Judge* GRIFFITH.

RANDOLPH, *Senior Circuit Judge*: Sandra Marshall's appeal is from the district court's grant of summary judgment dismissing her discrimination complaint on the ground of "judicial estoppel," stemming from her failure to disclose this lawsuit and related administrative proceedings on the schedules she filed with the bankruptcy court.

Marshall worked at the National Aeronautics and Space Administration in Maryland, making $50,000 a year as a "voice control manager." Her co-employers were Honeywell Technology Solutions, Inc.,[1] a government contractor, and L-3 Communications Government Services, Inc., a subcontractor now known as Engility. In late 2003, another company, SGT, Inc., took over the subcontract under Honeywell. SGT interviewed Marshall but did not hire her.

On December 29, 2003, Marshall filed charges against SGT with a Maryland human relations commission and with the Equal Employment Opportunity Commission, alleging that SGT had unlawfully discriminated against her based on her race and sex and that SGT retaliated against her because she had filed other discrimination complaints against other companies. In February 2004 – the dates and the sequence of filings have some significance – Marshall filed two additional charges with the same agencies, one against Honeywell, the other against Engility. Both of her charges also alleged race and sex discrimination and retaliation. By this time, Marshall therefore had three ongoing administrative proceedings against three separate companies, none of which were affiliated with each

---

[1] In filing this suit, Marshall incorrectly identified Honeywell Technology Solutions, Inc., as "Honeywell Technology Systems, Inc." The district court opinion from which Marshall appeals reflects the incorrect name, as does the caption in this court. *Marshall v. Honeywell Tech. Sys.*, 73 F. Supp. 3d 5 (D.D.C. 2014).

other. In August 2005, Marshall retained attorney JoAnn P. Myles to represent her in these proceedings and in any lawsuits that might result from them.

In September 2005, while her three EEOC proceedings were going forward, Marshall filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Columbia. *See* 11 U.S.C. § 301. Marshall was then residing in Washington, D.C. Freshstart Solutions, Inc. served as her "bankruptcy petition preparer," *see* 11 U.S.C. § 110, charging her a fee of $185.00.[2] This was Marshall's second bankruptcy petition in ten years. The Bankruptcy Code bars individuals from filing a new Chapter 7 petition within eight years of an earlier petition. 11 U.S.C. § 727(a)(8). Marshall had filed her 1995 petition with the assistance of an attorney in federal bankruptcy court in Baltimore, Maryland. That court granted her a discharge.

One of the schedules Marshall submitted with her September 2005 petition required her to list "all suits and administrative proceedings" to which she "is or was a party within one year" preceding her bankruptcy petition. On her "Statement of Financial Affairs," Marshall listed three such

---

[2] During the first Meeting of Creditors, Marshall told the trustee that although her sister's neighbor had looked over her bankruptcy filings, he had not charged her any money for doing so. But a document filed with the bankruptcy court signed by her preparer – "Disclosure of Compensation of Bankruptcy Preparer" – showed that this neighbor worked for Freshstart Solutions, Inc., and had charged Marshall $185. *See In re Frazier*, No. 12-29668-DER, 2013 WL 654399, at *4 (Bankr. D. Md. Feb. 21, 2013) ("[T]he reasonable value of the services of a bankruptcy petition preparer in a simple, straightforward consumer Chapter 7 bankruptcy case . . . does not exceed $100.00.").

matters. Two were civil actions in which she was a defendant. She gave the name of the court and its location in each case; in both she reported that judgment had been entered against her. The third matter she listed – "Internal Revenue Service vs Sandra McDougald"[3] – was an administrative proceeding that had not yet ripened into a judicial proceeding: Marshall left a blank under the form's heading "COURT OR AGENCY AND LOCATION." The only detail she provided was that the IRS matter was "Pending." On her Schedule E – "Creditors Holding Unsecured Priority Claims" – she listed the IRS "Insolvency Div" as a creditor in the amount of $5,500.[4]

Nowhere on her Statement of Financial Affairs (or on any other schedule) did Marshall disclose her three administrative proceedings against SGT, Honeywell, and Engility. Under penalty of perjury, she signed the Statement and affirmed that her answers were "true and correct." She also filed a "Personal Property" schedule, which required her to disclose all "contingent and unliquidated claims of every nature . . .." *See* 11 U.S.C. § 521(a)(1)(B)(ii). Again she stated under penalty of perjury that she had "None." On her Schedule F – "Creditors

---

[3] Marshall has changed her name at least twice. She filed her 1995 bankruptcy under the name Sandra McDougald, her 2005 bankruptcy under the name Sandra McDougald-Marshall, and her discrimination case under the name Sandra Marshall.

[4] There are several reasons to believe the IRS action was an administrative proceeding. In her deposition in this case, Marshall stated that she had been sued only twice, once by a company called Carydale and once by the State Department Federal Credit Union. There is also no record in the Tax Court or in any federal district court of a lawsuit between Marshall and the Internal Revenue Service. This suggests that the matter was an administrative proceeding before an appeals officer within the agency. *See* INTERNAL REVENUE SERVICE, INTERNAL REVENUE MANUAL 1.1.7 (2015).

Holding Unsecured Nonpriority Claims" – Marshall listed "Joann Myles, Esquire." Myles was the attorney representing Marshall in the three EEOC proceedings. Marshall did not report how much she then owed Myles. Her debts, including priority and nonpriority claims of 50 creditors, totaled $135,884.74. She reported total assets of $100.

Two months after she filed for bankruptcy, in the fall of 2005, Marshall attended a meeting of creditors, although none of her creditors attended. *See* 11 U.S.C. § 341. During the session, in response to the trustee's written interrogatories and the trustee's questioning, Marshall revealed that she had "an EEOC claim." When the trustee asked, "Against whom?" Marshall replied, "Honeywell." As to the status of her claim, she said it was "pending." The trustee then asked whether she had an attorney representing her in the Honeywell proceeding. She answered yes and, at the trustee's urging, she identified her attorney as JoAnn Myles and provided Myles' telephone number. Attorney Myles already knew of Marshall's Chapter 7 filing. As a creditor herself, she had received notice from the bankruptcy court. According to Marshall and Myles, her attorney later had a telephone conversation with the trustee and informed him of Marshall's other two administrative proceedings against Engility and SGT.

On December 30, 2005, Myles filed on Marshall's behalf a complaint in federal district court in Washington, D.C. against Honeywell, Engility, and SGT. Marshall's complaint contained a single count alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* She sought more than two million dollars in damages. Paragraph 9 of her complaint stated that "prior to filing this civil action" Marshall had filed "a written charge of age discrimination with" the EEOC and the local human rights commission. That statement was false. Marshall did not lodge an age

discrimination charge before those agencies until after she filed the lawsuit. In the next paragraph, Marshall stated that she "filed this action subsequent to the expiration of sixty (60) days from the filing of a charge of age discrimination with the [Maryland human rights commission] and the EEOC . . .." That too was false.[5]

Under the bankruptcy rules, "a debtor is under a duty both to disclose the existence of pending lawsuits when he files a petition in bankruptcy and to amend his petition if circumstances change during the course of the bankruptcy." *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 793 (D.C. Cir. 2010); *see* 11 U.S.C. § 541(a)(7). "[W]hen an estate is in bankruptcy under Chapter 7," as Marshall's estate was at the time, "the trustee is the representative of the estate and retains the sole authority to sue and be sued on its behalf." *Moses*, 606 F.3d at 793. Marshall did not amend her bankruptcy petition after she filed her age discrimination lawsuit. Rather, her attorney Myles alleges that she – Myles – spoke with the trustee's secretary over the phone about having filed the December 2005 lawsuit.

In late January 2006 the trustee issued a "Notice of Possible Dividends" informing creditors that Marshall's estate may have assets after all, but giving no other information. In February 2006, the bankruptcy court granted Marshall a discharge from

---

[5] The district court, finding that these statements were untrue, issued an order to show cause why sanctions under Rule 11 of the Federal Rules of Civil Procedure should not be imposed on attorney Myles. *Marshall v. Honeywell Tech. Sols., Inc.*, 536 F. Supp. 2d 59, 64 n.4 (D.D.C. 2007). The court later discharged the show cause order.

bankruptcy[6] and in June 2006 the bankruptcy court closed the case because her estate had no assets.

In early 2007, Marshall expanded her lawsuit. By then Marshall had received right-to-sue letters from the EEOC in her three administrative actions, notifying her that the agency had terminated its investigation of her charges against SGT, Honeywell and Engility. Marshall then amended her age discrimination district court complaint against these companies to add a litany of new charges, including counts of race and sex discrimination and retaliation against each defendant.

The district court dismissed many of her new charges and dismissed the age discrimination count because it had not been timely filed. *Marshall v. Honeywell Tech. Sols., Inc.*, 536 F. Supp. 2d 59, 64 n.4 (D.D.C. 2007).

Later, during several years of extensive discovery, the defendants learned for the first time of Marshall's simultaneous bankruptcy case. Then, in February 2009, Marshall's attorney Myles provided the defendants' attorneys with "Supplemental Discovery Documents" consisting of Marshall's filings in the bankruptcy proceeding. The documents revealed that Marshall had omitted her three administrative proceedings on her bankruptcy schedules and that she had not amended her bankruptcy filings to disclose what has become this lawsuit.

The district court – on December 18, 2009 – dismissed Marshall's complaint without prejudice, an interim decision Marshall has not challenged on appeal. *Marshall v. Honeywell Tech. Sols., Inc.*, 675 F. Supp. 2d 22 (D.D.C. 2009). The court held that Marshall's causes of action, which "existed by the time

---

[6] Marshall waited until late March 2006 to serve the three defendants in her age discrimination lawsuit.

8

Marshall filed her bankruptcy petition in September 2005," became property of the estate under the Bankruptcy Code when she filed her bankruptcy petition. *Id.* at 25. Because Marshall failed to list these causes of action on her bankruptcy schedules, the bankruptcy trustee did not abandon this estate property when he failed to intervene. *Id.* The trustee was therefore the real party in interest and Marshall did not have standing to pursue the lawsuit she had instituted. *Id.* at 26. Only then, in January 2010, five years after her bankruptcy discharge, did Marshall move to reopen her bankruptcy case, a motion the bankruptcy court promptly granted. Two months later, in March 2010, Marshall amended several of the bankruptcy schedules she had filed in 2005. For the first time she disclosed this lawsuit as an asset valued at "$1,000,000." She also added, on her Schedule D, attorney JoAnn Myles as a secured creditor holding a claim in the amount of "$150,000 Plus."

In June 2010, the district court granted the trustee's motion to reinstate Marshall's case, substituting the trustee for Marshall's estate as the plaintiff. But Marshall's estate had no money to hire another attorney and, given the passage of time, the bankruptcy trustee informed the district court that he could not "attract new counsel, unfamiliar with the case, on a contingency basis." Six months later, in early 2011, after settlement negotiations between the trustee and the defendants failed to yield an agreement, the trustee abandoned the case. As a result, the suit reverted to Marshall as plaintiff. *See Moses*, 606 F.3d at 795.

The defendants then filed a motion for summary judgment on the basis of judicial estoppel, arguing that Marshall's deception barred her from pursuing this action. The district court, finding *Moses v. Howard University Hospital*, 606 F.3d 789 (D.C. Cir. 2010), controlling, granted the defendants'

motion for reasons we describe in a moment. *Marshall v. Honeywell Tech. Sys.*, 73 F. Supp. 3d 5 (D.D.C. 2014).

At last we come to the issues in this case. One question, left open in *Moses*, 606 F.3d at 797, is the appropriate standard of review of judicial estoppel district court decisions granting summary judgment in cases such as this. Ordinarily we review a district court's grant of summary judgment *de novo*. *See, e.g.*, *Doe v. Gates*, 981 F.2d 1316, 1322 (D.C. Cir. 1993). A large majority of the courts of appeals, heeding the Supreme Court's description of judicial estoppel as "an equitable doctrine invoked by a court at its discretion," *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), have adopted an abuse-of-discretion standard rather than *de novo* review.[7] Many of the reasons underlying these decisions are ably set forth in *Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30-32 (1st Cir. 2004). We add another. *De novo* review would displace the discretion of the district court to apply judicial estoppel with the discretion of the appellate court to do so. We see no sense in this. *See United States v. McKinney*, 919 F.2d 405, 418 (7th Cir. 1990) (Posner, J. concurring). We therefore join the majority of

---

[7] *See Guay v. Burack*, 677 F.3d 10, 15-16 (1st Cir. 2012); *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 613 (3d Cir. 1996); *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196, 198 (4th Cir. 1998); *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 599-600 (5th Cir. 2005); *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 678 (8th Cir. 2012); *Engquist v. Or. Dept. of Agric.*, 478 F.3d 985, 1000 (9th Cir. 2007); *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1155-56 (10th Cir. 2007); *Talavera v. Sch. Bd. of Palm Beach Cty.*, 129 F.3d 1214, 1216 (11th Cir. 1997); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996); *but see Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (reviewing application of judicial estoppel *de novo*); *United States v. Hook*, 195 F.3d 299, 305 (7th Cir. 1999) (same).

circuit courts in holding that the standard of review in this sort of case is abuse of discretion.

In exercising its discretion to invoke judicial estoppel, the district court relied on our opinion in *Moses*, the only opinion of our court in a comparable case. Judicial estoppel "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire*, 532 U.S. at 749. In *Moses* we wrote: "every circuit that has addressed the issue has found that judicial estoppel is justified to bar a debtor from pursuing a cause of action in district court where that debtor deliberately fails to disclose the pending suit in a bankruptcy case." 606 F.3d at 798. Or as Judge Easterbrook put the point for the Seventh Circuit, the circuit courts "hold that a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006).

The basic concept is not new. Early in the last century the Supreme Court laid down a related rule. "It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it. If the claim was of value (as certainly this claim was, according to the judgment below), it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts, and still assert title to the

property." *First Nat'l Bank v. Lasater*, 196 U.S. 115, 119 (1905).[8]

Our court in *Moses* also held that in order for judicial estoppel to apply, there must be "a discernible connection" between the bankruptcy proceeding and the current lawsuit. 606 F.3d at 799. The connection here is the same. In Marshall's bankruptcy schedules, she denied the existence of her then-current discrimination claims and she brought this lawsuit after filing for bankruptcy even though, as in *Moses*, she was not a proper plaintiff. *Id.*

The court in *Moses* identified three other questions the district court "should answer in deciding whether to apply judicial estoppel." *Id.* at 798. The first is whether "a party's later position [is] clearly inconsistent with its earlier position . . .." *Id.* Here the district court found that Marshall pursued this lawsuit despite having sworn, under penalty of perjury, that no such lawsuit or legal claims existed. The district court also found that Marshall repeatedly failed to amend her bankruptcy petition when circumstances changed, despite having a legal duty to do so. 73 F. Supp. 3d at 9-10. And as in *Moses*, 606 F.3d at 799, Marshall held herself "out before the District Court as a proper plaintiff, a position which was clearly inconsistent with [her] pursuit of bankruptcy."

The next question *Moses* posed is: "Has the party succeeded in persuading a court to accept that party's earlier position, so

---

[8] The Supreme Court reiterated this statement twenty years later. In *Danciger v. Smith*, 276 U.S. 542, 547 (1928), the Court stated that "[t]he doctrine" of *Lasater* is "that a bankrupt who omits to schedule and withholds all knowledge of a valuable claim, cannot, after obtaining a discharge from his debts, assert title to such claim and maintain a suit thereon in his own right . . .."

that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled?" *Id.* at 798. Here again the *Moses* case and Marshall's case are indistinguishable and the district court so found. 73 F. Supp. 3d at 10. To quote from our opinion in *Moses*, "the bankruptcy court's decision to initially discharge Moses [and Marshall] from Chapter 7, and the District Court's decision to allow this case to continue even during the pendency of Moses's [and Marshall's] bankruptcy proceedings, leaves little doubt that Moses [and Marshall] succeeded in hiding the inconsistency from the courts and 'creating the perception that either the first or the second court was misled.'" *Moses*, 606 F.3d at 799 (quoting *New Hampshire*, 532 U.S. at 750).

The third question in *Moses* dealt with the effect of the debtor's inconsistent positions. Here, the district court determined that "Marshall's bankruptcy creditors were disadvantaged by her non-disclosure. Marshall's non-disclosure of her discrimination claims allowed the bankruptcy proceeding to close as a 'no asset' case and prevented early discussions of settlement or abandonment by the Trustee." 73 F. Supp. 3d at 11. The district court added that in Marshall's amended schedules, filed after the bankruptcy court reopened the case, she listed for the first time her attorney as a secured creditor to whom she owed "$150,000 Plus," which the court said "reduced the potential bankruptcy payout to other creditors." *Id.*[9]

---

[9] Marshall's amended Schedule D states that she incurred this debt to attorney Myles on December 30, 2005, three months after she had filed her bankruptcy petition seeking a discharge of pre-petition debts." *See* 11 U.S.C. § 727(b) (providing that a discharge under Chapter 7 relieves the debtor "from all debts that arose before the date" the bankruptcy petition was filed); *see also Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1128 (7th Cir. 2003). None of the parties have addressed this subject and so we will not say anything further about it.

Quoting our opinion in *Moses*, 606 F.3d at 800, the district court concluded that "Marshall 'offended the integrity of the District Court' by presenting herself as a proper party to this Court based on a position that is flatly inconsistent with the position she took in the bankruptcy proceedings." 73 F. Supp. 3d at 11. Of this there can be no doubt. In the nine years from 2005 until the district court issued summary judgment in 2014, this lawsuit generated nearly 200 docket entries, the bulk of which came before the defendants discovered Marshall's bankruptcy proceedings. During those years, motions, memoranda, oppositions, replies, orders and judicial opinions (two of which were published) mounted. A moment's research by Marshall's counsel or by Marshall herself, *see Cannon-Stokes*, 453 F.3d at 449, would have revealed that during this extensive period of intense back and forth between the parties Marshall had no standing to be a plaintiff. Years later, after so much water spilled over the dam, the trustee, as the sole party in interest, determined that it "would be difficult . . . to attract new counsel, unfamiliar with the case, on a contingency basis." No new counsel entered an appearance for the trustee.

As against this, Marshall argues that judicial estoppel should not apply because she orally disclosed one of her three discrimination claims to the trustee at the creditors' meeting in 2005, and her attorney allegedly had a telephone conversation with the trustee about the other two.[10] The district court

---

[10] Marshall also argues that she cured her false representations in her 2005 bankruptcy schedules when she amended them in 2010, after the bankruptcy court reopened her case. *Moses* forecloses this argument: to accept the argument would be to lessen the needed incentive for the debtor to provide complete and truthful information at the outset and "would similarly diminish the [judicial estoppel] doctrine's ability to deter the debtor from pursuing claims in the District Court to which he is not entitled." 606 F.3d at 800.

rejected Marshall's argument. For one thing, "oral disclosure does not meet the requirements of the bankruptcy code." *Guay v. Burack*, 677 F.3d 10, 20-21 (1st Cir. 2012); *see Jeffrey v. Desmond*, 70 F.3d 183, 187 (1st Cir. 1995); *Vreugdenhill v. Navistar Int'l Transp. Co.*, 950 F.2d 524, 526 (8th Cir. 1991). For another, Marshall's oral disclosure to the trustee did not constitute notice to her creditors and could not correct the false information she conveyed on her schedules. *See Barger v. City of Cartersville*, 348 F.3d 1289, 1295 (11th Cir. 2003); *but see Matthews v. Potter*, 316 Fed. App'x 518, 522-23 (7th Cir. 2009).[11] The bankruptcy court's September 2005 Notice to each of Marshall's creditors understandably treated her bankruptcy petition as a "no asset case." In the Explanations section of the Notice, the following appeared: "There does not appear to be any property available to the trustee to pay creditors. *You therefore should not file a proof of claim at this time.*" Bankruptcy Case No. 05-01448, ECF No. 13, at 2 (Bankr. D.D.C. Sept. 27, 2005) (italics in original).

Creditors wishing to evaluate a debtor's financial condition commonly consult the on-line resource PACER (Public Access to Court Electronic Records). The Internal Revenue Service – one of Marshall's creditors – instructs employees of its insolvency units to do so. INTERNAL REVENUE SERVICE, INTERNAL REVENUE MANUAL 5.9.6.11.2 (2015). Any of Marshall's dozens of creditors who checked PACER in order to

---

[11] In *Matthews*, the Seventh Circuit suggested that oral disclosure was relevant, but the court did not imply that it was dispositive. The court simply remanded for the district court to "make a factual determination, by evidentiary hearing if necessary, regarding the nature and extent of the disclosures [the debtor] made to the Chapter 7 trustee at the meeting of creditors," and to decide whether judicial estoppel was justified under all the circumstances of the case. *Matthews*, 316 Fed. App'x at 523.

examine Marshall's financial condition as revealed in her bankruptcy petition and in her accompanying schedules would have given up the chase. And because of her deception they would have been entirely justified in doing so.

This brings us to Marshall's remaining argument. In *New Hampshire*, the Supreme Court wrote: "We do not question that it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." 532 U.S. at 753 (internal quotation marks omitted). To take advantage of the Supreme Court's remark, Marshall filed an affidavit stating that when she filed her bankruptcy petition and schedules in 2005, "I had no knowledge that I was required to list my discrimination administrative proceedings on my bankruptcy petition schedules or on any financial statements." She tells us, as she told the district court, that her failure to list her pending administrative claims resulted from her "inadvertence or mistake."[12]

Relying on *Moses*, the district court rejected Marshall's argument. 73 F. Supp. 3d at 11. *Moses* held that a debtor could not avoid judicial estoppel if he omitted his pending cause of action but reported "pending lawsuits that, unlike the instant case, reduced the overall value of his assets through wage garnishment." 606 F.3d at 800. For good reason, the district court in this case determined that Marshall was in the same

---

[12] For five years, from the filing of her bankruptcy petition in 2005 until March 2010, Marshall had a continuing duty to amend her bankruptcy schedules to reflect her administrative complaints that ultimately formed the basis of this lawsuit. *See Moses*, 606 F.3d at 793; *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999). The trustee's inquiries at the creditors' meeting, as well as the instructions on the bankruptcy schedules, were more than enough to alert her of the need to do so.

position as the plaintiff-debtor in *Moses*. On part 4 of Marshall's Statement of Financial Affairs – "Suits and administrative proceedings" – she disclosed two civil actions against her, both of which had gone to judgment,[13] and an IRS administrative proceeding she described as "Pending."[14] Each of these three matters increased the negative net value of Marshall's estate. Although her separate charges against the three defendants she later sued were then tied up in administrative proceedings, she did not disclose them. Yet she must have understood that administrative proceedings had to be listed. Otherwise there is no explanation – Marshall offered none – for her reporting in part 4 of her Statement of Financial Affairs the IRS administrative proceeding.

The instruction on the Statement of Financial Affairs was clear enough: "List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." Marshall understood that her three pending discrimination claims were, as she admitted in her affidavit, "administrative proceedings." She could not have overlooked these claims. Her attorney alleges that in November 2005, she told the bankruptcy trustee that Marshall's pending EEOC claims for race and sex discrimination and retaliation, "had a value of at least $100,000 . . . and [perhaps] more depending on what a jury might award

_____

[13] Both civil actions were in a Virginia court. Marshall listed one as "Carydale vs Sandra McDougald." On Marshall's Schedule F (Creditors Holding Unsecured Nonpriority Claims) she reported that "Carydale Enterprises" had a claim against her for $2,572.47. The other civil action was "State Department F[CU] vs Sandra McDougald." On her Schedule F she listed a debt to the "State Department FCU" of $267.10.

[14] On her Schedule E (Creditors Holding Unsecured Priority Claims), Marshall listed the IRS as a creditor in the amount of $5,500.

for punitive damages." A few weeks later, Marshall filed an age discrimination complaint in federal court seeking more than $2 million in damages. And when Marshall finally amended her bankruptcy schedules in 2010 to include this lawsuit, she listed its value as $1,000,000.

For all of these reasons, Judge Lamberth, the district judge in this case, quite properly invoked judicial estoppel to grant summary judgment in favor of the defendants.

We could end our opinion here. Cases such as this one are legion in the other circuits. So we add a few words about how the courts of appeals have evaluated the frequent contentions of bankruptcy debtors in light of the Supreme Court's observation – in a case that did not involve inadvertence or mistake – that "it may be appropriate to resist judicial estoppel when a party's earlier position was based on inadvertence or mistake." 532 U.S. at 753 (internal quotation marks omitted).

Many courts of appeals have adopted the Fifth Circuit's statement that a "debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999) (italics in original); *see Barger*, 348 F.3d at 1295-96; *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002); *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1157 (10th Cir. 2007). Others have found that evaluating subjective motivations is difficult and the court can therefore presume that a debtor has acted intentionally, unless there is evidence otherwise. The Third Circuit, for example, has held that if a debtor knowingly omits valuable assets from her bankruptcy schedules, the court may infer that the omission was not an innocent mistake. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir.

2003); *see also Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1287-88 (11th Cir. 2002). The Ninth Circuit, disagreeing, holds that district courts must give weight to "the plaintiff's subjective intent when filling out and signing the bankruptcy schedules." *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 277 (9th Cir. 2013).

We see no need to take sides in this debate, if indeed there are discrete sides at all. In practice, even those courts of appeals that have followed the Fifth Circuit's lead have not been "as rigid as one would expect" in practice. *Ah Quin*, 733 F.3d at 277. The Fifth Circuit itself has emphasized that judicial estoppel requires a "holistic, fact-specific consideration of each claim . . .." *Reed v. City of Arlington*, 620 F.3d 477, 482 (5th Cir. 2010), *rev'd on other grounds en banc*, 650 F.3d 571 (5th Cir. 2011). The Eleventh Circuit has held that courts "must always give due consideration to all of the circumstances of a particular case . . .." *Barger*, 348 F.3d at 1294. And the Seventh Circuit, which has said that "subjective intent does not matter," *Becker v. Verizon N., Inc.*, No. 06-2956, 2007 WL 1224039, at *1 (7th Cir. Apr. 25, 2007), has also described judicial estoppel as a "flexible equitable doctrine" that "does not lend itself to rigid rules," *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 796 (7th Cir. 2013).

The Supreme Court doubted that there is "any general formulation of principle" that governs all cases involving judicial estoppel. *New Hampshire*, 532 U.S. at 750. If some courts of appeals have held otherwise – and we are not convinced that they have – we disagree. Instead, as with many matters that are left to the discretion of district courts, we believe that it is better to wait until "a settled practice has developed in cases of the type" and "the channel of discretion ha[s] narrowed" organically. Henry J. Friendly, *Indiscretion About Discretion*, 31 EMORY L.J. 747, 771-72 (1982). Our

circuit has seen few cases involving judicial estoppel in bankruptcy cases, and we are reluctant to made broad pronouncements prematurely. Instead, we hold that considering all of the relevant factors, the district court in this case did not abuse its discretion.

*Affirmed.*

1

GRIFFITH, *Circuit Judge*, dissenting: I agree with most of what the majority says. Sandra Marshall may well have deliberately left her civil claims off her bankruptcy forms in an effort to conceal her assets from the bankruptcy court. Had she undisputedly done so, the district court would have been within its discretion to grant summary judgment on the basis of judicial estoppel, just as we affirmed in *Moses v. Howard University Hospital*, 606 F.3d 789 (D.C. Cir. 2010). But summary judgment is appropriate only if the defendants have shown that there is "no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When making this determination, we view the evidence in its full context and in the light most favorable to Marshall, resolving "any doubts" as to the existence of a genuine issue for trial in her favor. *McSurely v. McClellan*, 697 F.2d 309, 321 (D.C. Cir. 1982). Because Marshall told the trustee about her civil claims, there is a genuine dispute over whether she lied or simply made a mistake on her bankruptcy forms. And because judicial estoppel is inappropriate in cases of mistake, whether she lied or made a mistake is material. Accordingly, I would hold that the district court abused its discretion by applying judicial estoppel to grant summary judgment against Marshall.

Judicial estoppel is an equitable remedy that we apply to prevent litigants from manipulating the judicial system. Its purpose is to "protect the integrity of the judicial process," *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982)), by "prevent[ing] parties from 'playing fast and loose with the courts,'" *id.* at 750 (quoting *Scarano v. Cent. R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). This is why judicial estoppel "looks toward cold manipulation and not unthinking or confused blunder." *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980) (quoting *Johnson Serv. Co. v.*

*Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir. 1973)). The Supreme Court likewise instructs that judicial estoppel "may be [in]appropriate" when a party's past misrepresentation "was based on inadvertence or mistake" rather than a lie. *New Hampshire*, 532 U.S. at 753 (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)).

Accordingly, many of our sister circuits do not apply judicial estoppel when a party inadvertently omits information from a bankruptcy filing. *See, e.g.*, *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547-48 (7th Cir. 2014); *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 276-77 (9th Cir. 2013); *Stephenson v. Malloy*, 700 F.3d 265, 275 (6th Cir. 2012); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 364 (3d Cir. 1996). We have never disagreed with this approach. The majority relies heavily on our decision in *Moses*, but that case is fully consistent with our longstanding refusal to apply judicial estoppel to "unthinking or confused" litigants who neither manipulate the judicial system nor threaten the integrity of the judicial process. *Konstantinidis*, 626 F.2d at 939 (quoting *Johnson*, 485 F.2d at 175). *Moses* involved a plaintiff who selectively disclosed his liabilities, concealed his assets, and offered *no* evidence to support his claim that he made a mistake, much less evidence as probative as an oral disclosure to the trustee. In short, the plaintiff in *Moses* did not present a genuine issue as to whether he made a mistake on his bankruptcy forms.

The majority does not dispute that judicial estoppel is inappropriate in cases of mistake. But the majority improperly limits the evidence that it considers in evaluating whether Marshall made a mistake. It concludes that Marshall lied to the bankruptcy court solely because she disclosed her liabilities (cases in which she was a defendant) on her

bankruptcy forms yet concealed her assets (cases in which she was a plaintiff). But this conclusion overlooks Marshall's oral disclosure, which suggests she made a mistake on her forms. Instead, the majority treats Marshall's oral disclosure as wholly unrelated to her claim of mistake, concluding simply that an oral disclosure to the trustee neither satisfies the bankruptcy code's requirements nor provides notice to creditors. Nowhere does the majority acknowledge that Marshall's oral disclosure might also bear on whether she made a mistake on her written forms.

The district court likewise never considered Marshall's oral disclosure as relevant evidence when it concluded that she lied to the bankruptcy court. Marshall pointed out that were she "trying to escape liability," she "would not have disclosed" her assets to the trustee during their meeting. Br. for Pl. in Opp'n to Summ. J. at 17, *Marshall v. Honeywell Tech. Sys., Inc.*, 73 F. Supp. 3d 5 (D.D.C. 2014). But the district court acknowledged her oral disclosure to the trustee only to conclude that it "did not relieve her of the obligation to provide complete information in her Bankruptcy Petition." *Marshall*, 73 F. Supp. 3d at 10. And when evaluating Marshall's claim that she made a mistake on her forms, the district court never mentioned her oral disclosure, finding that she lied solely because she disclosed her liabilities yet concealed her assets. *Id.* at 11.

But it is wrong to evaluate Marshall's oral disclosure and her claim that she made a mistake on her forms as wholly separate issues. *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc) (explaining that at summary judgment, "the court must consider all the evidence in its full context"). Instead, her oral disclosure is evidence that she never lied at all. Marshall voluntarily told the trustee about her assets, and that fact, viewed in the light most favorable to

Marshall, suggests she was not trying to hide anything, notwithstanding what she left off her forms. Thus, like the Sixth and Seventh Circuits, I would hold that a debtor's oral disclosure to the trustee is material evidence of mistake and would accordingly reverse the grant of summary judgment. *See Stephenson*, 700 F.3d at 275 (reversing grant of summary judgment, reasoning that an oral disclosure to the trustee suggests no "intent to hide" a claim); *Spaine*, 756 F.3d at 547 ("Spaine's disclosure made the trustee aware of the litigation, and the trustee made a decision about its value to her creditors. That testimony protects Spaine from an inference on summary judgment that she deliberately concealed her claim from the bankruptcy trustee and her creditors."). *But see Guay v. Burack*, 677 F.3d 10, 19-20 & n.7 (1st Cir. 2012).

This straightforward approach to mistake is particularly appropriate in the bankruptcy context, where "[h]onest mistakes and oversights are not unheard of." *Spaine*, 756 F.3d at 548. Indeed, a major reason that trustees meet with debtors in the first place is to prevent inadvertent errors on bankruptcy forms, which are often filled out by people like Marshall who have little knowledge of the legal system. *See id.* The bankruptcy code clearly anticipates that mistakes might happen; it requires trustees to investigate debtors' financial affairs and meet with them to talk about their assets and liabilities, 11 U.S.C. §§ 341, 704(a)(4), and the Federal Rules of Bankruptcy Procedure allow amendments to initial filings, Fed. R. Bankr. P. 1009(a).

Furthermore, I see little to be gained by jumping to the conclusion that Marshall lied. When we apply judicial estoppel based on bankruptcy omissions, the costs primarily fall not on the plaintiff, but on her creditors, who might otherwise recover assets from successful lawsuits. *See Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006); *Ah*

*Quin*, 733 F.3d at 276 ("If Plaintiff's bankruptcy omission was mistaken, the application of judicial estoppel in this case would do nothing to protect the integrity of the courts, would enure to the benefit only of an alleged bad actor, and would eliminate any prospect that Plaintiff's unsecured creditors might have of recovering."). Here, the defendant corporations, who are accused of unlawful conduct, will get a windfall at the expense of Marshall's creditors, who are accused of nothing at all.

Nor would it rewrite the bankruptcy code to acknowledge that sometimes debtors make mistakes on their bankruptcy forms. To be sure, Marshall had a "duty" to disclose potential claims on her bankruptcy forms and to amend those forms when she filed suit. *Moses*, 606 F.3d at 793. She violated the bankruptcy code by failing to do so. But this fact, without more, does not answer the question before us: whether Marshall's noncompliance with the bankruptcy code warrants the application of judicial estoppel in her current lawsuit. Judicial estoppel is appropriate only if Marshall's failure was deliberate, and not merely because she violated her duty to disclose. *See Ryan Operations*, 81 F.3d at 364 ("[T]he requisite intent for judicial estoppel [cannot] be inferred from the mere fact of nondisclosure in a bankruptcy proceeding."); *see also Moses*, 606 F.3d at 798 (recognizing that courts of appeals generally apply judicial estoppel when a debtor "deliberately" fails to disclose her pending suit in an earlier bankruptcy case).

I agree with the majority that Marshall's selective written disclosures suggest she lied on her forms. But her oral disclosure to the trustee points in the other direction. This is precisely the type of genuine dispute of material fact that the district court should not have resolved at summary judgment. However, the majority expressly declines to set a rule

dictating how the district court is to evaluate claims of mistake and takes no stance on the role of an oral disclosure in this calculus. Thus, I do not read the majority opinion to limit the ability of a district court to consider a debtor's oral disclosure as evidence of mistake in a future case.