# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-01238-SCT

*ERNEST T. JONES*

*v.*

*ALCORN STATE UNIVERSITY, DARREN J.
HAMILTON PH.D., IN HIS INDIVIDUAL
CAPACITY,  AND BOARD OF TRUSTEES OF
MISSISSIPPI  INSTITUTIONS OF HIGHER
LEARNING*


| | |
|---|---|
| DATE OF JUDGMENT: | 10/15/2020 |
| TRIAL JUDGE: | HON. TOMIKA HARRIS IRVING |
| TRIAL COURT ATTORNEYS: | JIM WAIDE |
| | J. CAL MAYO, JR. |
| | SARAH KATHERINE EMBRY |
| | AMANDA GREEN ALEXANDER |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JIM WAIDE |
| | MICHAEL EARL KEYTON |
| | WAYNE E. FERRELL, JR. |
| ATTORNEYS FOR APPELLEE: | AMANDA GREEN ALEXANDER |
| | J. CAL MAYO, JR. |
| | SARAH KATHERINE EMBRY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 05/12/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.　　Ernest T. Jones  appeals the decision of the Claiborne County Circuit Court that

granted the motion for summary judgment of the Board of Trustees of the State of

Institutions of Higher Learning of the State of Mississippi  (IHL) because the doctrine of

judicial estoppel barred his claims. After a review of the record, the trial court's rulings, the briefs, and arguments presented, this Court affirms the circuit court's findings that Jones failed to reveal his lawsuit against the IHL in bankruptcy filings in Florida, one in 2015, and another in 2017. We discern no abuse of discretion in applying judicial estoppel to the facts found in this record. The circuit court exercised sound discretion in concluding that the judicial estoppel doctrine barred Jones's action and was eminently correct when she granted summary judgment for the IHL. We affirm the judgment of the circuit court dismissing this case with prejudice.

## FACTUAL AND PROCEDURAL HISTORY

¶2.	On January 2, 2008, Ernest Jones became the head football coach at Alcorn State University. Subsequently, Jones filed a breach of contract action against the IHL on December 5, 2008. Jones was fired in January 2009.

¶3.	In October 2015, Jones petitioned a bankruptcy court in Florida for protection from his creditors.[1] Jones attested under oath that documents filed in electronic form would be treated for all purposes (both civil and criminal) in the same manner as though signed and subscribed. On October 30, 2015, Jones filed his bankruptcy disclosures. Jones swore under penalty of perjury that he had no "contingent or unliquidated" claims of any nature. Jones further failed to disclose the breach of contract suit against the IHL in the bankruptcy

---

[1]Jones, along with his wife, filed a joint bankruptcy petition. The form mandated that married debtors "must include information concerning either or both spouses."

schedule's "list of suits and administrative proceedings to which the debtor was a party within one year immediately preceding the filing of this bankruptcy case." Jones never revealed this suit in that proceeding, prior to voluntarily dismissing the proceeding.

¶4.     In January of 2016, Jones's suit in Claiborne County resulted in a jury verdict of $500,000. On the very same day of receiving the verdict, Jones filed a notice of voluntary dismissal of the 2015 bankruptcy proceeding. Jones had never disclosed the Claiborne County suit to the bankruptcy court or any of his creditors at that time.

¶5.     The IHL filed a post-trial motion for JNOV or a new trial. On July 7, 2016, the circuit court granted the IHL's motion and set aside the verdict. On July 20, 2016, Jones appealed the circuit's court decision. ***Jones v. Miss. Insts. of Higher Learning (Jones I)***, 264 So. 3d 9 (Miss. Ct. App. 2018), *cert. denied*, 263 So. 3d 666 (Miss. 2019) (table).

¶6.     Then in April 2017, while Jones's appeal was pending before the Court of Appeals, he filed a second bankruptcy petition. On May 25, 2017, Jones proposed and filed his Chapter 13 plan. Despite the pending appeal, Jones again failed to disclose this suit to the bankruptcy court, attesting under oath that no such claims exist. Jones also swore that all documents contained within his plan were true and correct. The bankruptcy court confirmed his plan on December 4, 2017, accepting Jones's false statements that he had no actual or potential claims against third parties unrelated to the bankruptcy action.

¶7.     In August 2018, the Mississippi Court of Appeals reversed and remanded. ***Jones I***, 264 So. 3d at 34. In December 2018, Jones modified his bankruptcy plan, which was

3

accepted by the bankruptcy court in January 2019. Later in 2019, Jones filed a supplemental complaint in Claiborne County.

¶8. Subsequently, the IHL moved for summary judgment, averring that the doctrine of judicial estoppel barred him from recovery. Within ten days of the IHL's seeking dismissal, Jones moved to amend his bankruptcy plan and for the first time disclosed this lawsuit. Thereafter, the circuit court held a hearing on the IHL's motion for summary judgment.

¶9. On October 15, 2020, the trial judge granted the IHL's motion, dismissing Jones's case. The trial judge found that "Jones contends that his wife, and not he, electronically signed the bankruptcy documents, and therefore there was an inadvertence." The trial judge further explained, "[Jones] simply states that because there was a lack of intent to deceive, judicial estoppel should not apply. However, the test for inadvertence is not that there is a lack of intent to deceive." Jones offered no material evidence that the actions described were inaccurate. *See supra* ¶¶ 3-7. The trial judge found the elements for application of judicial estoppel had been satisfied.

## STANDARD OF REVIEW

¶10. We review a trial court's grant or denial of a motion for summary judgment de novo. ***Copiah Cnty. v. Oliver***, 51 So. 3d 205, 207 (Miss. 2011). The standard of review when considering a trial court's application of judicial estoppel is abuse of discretion. ***Adams v. Graceland Care Center of Oxford, LLC***, 208 So. 3d 575, 579 (Miss. 2017); ***Jourdan River Ests., LLC v. Favre***, 278 So. 3d 1135, 1153 (Miss. 2019); ***Rogers v. Gulfside P'ship***, 206

4

So. 3d 1274, 1278 (Miss. 2016); *Jackson v. Harris*, 303 So. 2d 454, 457 (Miss. 2020).

¶11.    The dissent's disagreement with the standard of review for judicial estoppel's application is inconsistent with our precedent.  The proper standard of review for cases of this type has been addressed by this Court previously, and de novo review only has been rejected.

¶12.    A Court of Appeals plurality opinion, penned by then- Judge James and joined by then-Judge Griffis, conflated the standard of review. *See Adams v. Graceland Care Center of Oxford*, *LLC*, 208 So. 3d 597 (Miss. Ct. App. 2015).  A plurality opinion of the Court of Appeals reversed and remanded the case for a trial on the merits, over a spirited dissent penned by now-Presiding Judge Wilson.  *Id.*

¶13.    Graceland sought certiorari, which we granted. *Adams*, 208 So. 3d at 578.  Graceland argued that the Court of Appeals "usurped the trial court's discretion by imposing the wrong standard of review." *Id.* (internal quotation marks omitted).  This Court found the Court of Appeals' opinion erred by utilizing a de novo review of the circuit court's application of judicial estoppel, despite its statement that abuse of discretion was the appropriate standard of review. *Adams*, 208 So. 3d at 579;  *Adams*, 208 So. 3d at 600. This Court found that the Court of Appeals had conflated the standards. *Adams*, 208 So. 3d at 579.We explicitly held the appropriate analysis requires an appellate court to use the abuse of discretion standard to review the trial court's application of judicial estoppel. *Id.* As more eloquently stated by Justice Maxwell's opinion, the standard of review for judicial estoppel has been well

5

developed in federal jurisprudence. Most federal circuits hold that the application of judicial

estoppel is a discretionary call that must be reviewed for abuse of discretion, analogous to

*Adams*. *See* Sp. Con. Op. ¶¶ 42-50. Additionally, multiple Mississippi decisions apply

similar framework as *Adams*, some of which then-Judge Griffis or now-Justice Griffis has

joined.

¶14.    Before *Adams*, *Rogers v. Gulfside Casino Partnership*, 206 So. 3d 1274, 1278-79

(Miss. Ct. App. 2016) (internal quotation marks omitted), penned by now-Presiding Judge

Wilson and joined by then-Presiding Judge Griffis, discussed in depth how judicial estoppel

implicates a "twofold standard for review[.]" "Although we commonly state that we review

the circuit court's decision to grant summary judgment de novo, a trial court's imposition of

judicial estoppel . . . is subject to review under an abuse of discretion standard." *Id.* at 1278.

The *Rogers* court referenced this Court in its opinion inferring that a two-pronged standard

of review was not a foreign or novel concept. "If a grant of summary judgment depends on

an underlying evidentiary ruling, an appellate court applies "a twofold standard of review,"

first reviewing the evidentiary ruling for an abuse of discretion, then removing the remaining

question of law de novo." *Id.* at 1279 (quoting *Bennett v. Highland Park Apartments, LLC*,

170 So. 3d 450, 452 (Miss. 2015)).

> In this case, however, the circuit court's grant of summary judgment was based
> entirely on its ruling on the issue of judicial estoppel. Thus, if the court's
> imposition of judicial estoppel was not an abuse of discretion, it necessarily
> follows that its grant of summary judgment was proper. Therefore, the only
> question we must address is whether the circuit court abused its discretion by
> imposing the doctrine of judicial estoppel.

*Id.* Like *Rogers*, the Claiborne County trial judge's ruling was based entirely on the issue of judicial estoppel.

¶15.    After *Adams, Jourdan River Estates v. Favre*, 278 So. 3d 1135, 1153 (Miss. 2019), penned by Presiding Justice Kitchens and joined by Justice Griffis, applied the two-pronged standard of review. In that case, the defendants argued in the circuit court that Jourdan River Estates should be judicially estopped from bringing its suit for damages because Jourdan River Estates did not list that potential damages suit in its bankruptcy schedules in 2009. The Court noted, "we review the circuit court's application of judicial estoppel using the abuse of discretion standard,' but we 'use the [de novo] standard to determine whether summary judgment was or was not appropriate.'" *Id.* (alteration in original); *Adams*, 208 So. 3d at 580). The standard of review as set forth in *Adams* comports with a majority of courts throughout the United States. *See* Sp. Con. Op. ¶¶ 42-50; see *supra* ¶ 11.

## DISCUSSION

¶16.    Jones primarily focuses on two issues, *inter alia*. However, in his brief, only two arguments were set forth.  We will address each issue, which we repeat verbatim.

> **I.      The trial court erred in disregarding the order of the bankruptcy court of the Northern District of Florida, which adopted Jones' modified plan allowing Jones to proceed with his suit, but to pay any proceeds to the Chapter 13 trustee bankruptcy.**

¶17.    Jones challenges the Mississippi trial court's authority to apply the judicial estoppel doctrine in a Mississippi court and alleges a violation of the Supremacy Clause. Application of judicial estoppel was not raised in the bankruptcy proceeding, other than the court

7

modifying Jones's Chapter 13 plan.

> In the event that Debtor receives any proceeds from the lawsuit against Alcorn State University, Darren J. Hamilton, PH.D, and the Board of Trustees of Higher Learning of the State of Mississippi which are deemed non-exempt, the funds will be turned over to the trustee for the benefit of the unsecured creditors over and above what is being paid to unsecured creditors.

(Emphasis added.) The order was a conditional order directed to the debtor, not to the Claiborne County Circuit Court and required compliance by the debtor only if he prevailed.

¶18.    After Jones's belated disclosure, no attempt was made by the Bankruptcy Court to strip the court's power to apply the doctrine to bar Jones from pursuing the Mississippi suit he failed to disclose.  Not one of the cases Jones cites involves a finding that a state's court application of judicial estoppel violates the Supremacy Clause. *See **Stone Crushed P'Ship v. Jackson***, 908 A.2d 875, 879-80 (Pa. 2006); ***Koffman v. Osteoimplant Tech. Inc.***, 182 B.R. 115, 123-28 (D.C. Md. 1995).  Thus, the trial court was soundly within its power to apply judicial estoppel. This argument is wholly without merit, factually and legally.

> **II.     Alternatively, should the circuit court erroneously refuse to follow the orders of the Florida Bankruptcy Court, it should decide that there were issues of material fact as to fraudulent intent or bad faith, thus precluding summary judgment on the equitable issue of judicial estoppel.**

¶19.  "Judicial estoppel is designed to protect the judicial system and applies where 'intentional self contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" ***Kirk v. Pope***, 973 So. 2d 981, 991 (Miss. 2007). Jones argues that judicial estoppel should not be applied absent a showing of fraudulent

8

intent or bad faith, ignoring the broader harm of manipulating our system of justice for private gain. Instead, this Court looks at whether *vel non* the debtor had motive not to disclose his claim. *Jackson v. Harris*, 303 So. 3d 454, 459 (Miss. Ct. App. 2009). "If a debtor does not disclose his claim, he can keep the net proceeds of any settlement or judgment rather than pay his debts to creditors who are not repaid in full under terms of bankruptcy plan." *Id.* Jones presented no evidence that his motive for concealment was inapplicable in this case.

¶20.    Jones urges this Court to abandon our duty to protect the judicial system. In the case *sub judice*, Mississippi law and precedent clearly apply. Our existing law sets forth three elements to be met for its application. The law does not require a separate finding of fraudulent intent or bad faith. Thus, his arguments lack merit. In determining whether to apply judicial estoppel, courts examine the following criteria: (1) the party against whom judicial estoppel is sought has asserted a legal position "which is inconsistent with one previously taken during litigation, (2) a court accepted a previous position, and (3) the party did not inadvertently take the inconsistent positions." *Clark v. Neese*, 131 So. 3d 556, 560 (Miss. 2013)(citing *Kirk*, 973 So. 2d at 991); *Adams*, 208 So. 3d at 580.

¶21.    In the case *sub judice*, the trial court found that "Jones did not disclose the information of this lawsuit, which was initially filed in 2008, in his voluntary bankruptcy petition in 2015. Because Jones had an affirmative duty to disclose, Jones's omission was a representation that no such claim existed." Jones failed to disclose his Claiborne County lawsuit in both his

9

2015 and 2017 bankruptcy petitions. The first element is satisfied.

¶22.    Next, the bankruptcy court accepted the 2017 bankruptcy schedules when it approved Jones's plan, satisfying the second element of judicial estoppel, that a court accepted Jones's inconsistent position. *Adams*, 208 So. 3d at 580. Jones's amendment of his bankruptcy schedules after the IHL filed its motion for summary judgement does not ameliorate the original failure to disclose. *Id.* "Allowing the debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them." *Adams*, 208 So. 3d at 581. Therefore, Jones's belated attempts to overcome the initial false disclosures in his proposed 2017 plan was futile and ineffective. The trial court's determination that "Jones failure to disclose the present proceedings" led the bankruptcy court to accept the inconsistent position is an accurate assessment, supported by the record and well within the court's discretion.

¶23.    We discern no error in the trial court's finding that Jones's repeated nondisclosures in his bankruptcy schedules were not inadvertent. The record supports that Jones had knowledge of the undisclosed claims. Jones knew the facts underlying his claims and pursued those claims in three different forums while not disclosing this litigation to the bankruptcy court and his creditors. Jones's claim against the IHL was never dormant; he had been actively pursuing that claim since 2008. Jones's execution of a voluntary dismissal of the 2015 bankruptcy on the very same day the jury returned a verdict in his favor is very

10

telling, perhaps trumped by Jones's refiling for bankruptcy in 2017 after the trial court overturned the jury verdict. Once again, he failed to disclose the claim after he prevailed in the Court of Appeals in 2018. Only days after his inconsistent decisions were exposed in 2020 did he seek to amend his bankruptcy schedules in Florida bankruptcy court.

¶24.    Jones unconvincingly told the circuit judge that he did not know he had to disclose lawsuits in the bankruptcies. Jones then offered that he signed the forms without reading the questions, before allowing that his wife attended to the bankruptcy dealings. None of those contentions support that he lacked knowledge of his claims against the IHL. The trial court correctly noted that the test is lack of knowledge of the existing claims. The intent to deceive the creditors or the bankruptcy court is not a required element to apply judicial estoppel. He swore under oath that his schedules were accurate when they were not. The trial court, well within her discretion, found that Jones did not lack knowledge of his claims.

¶25.    The trial court found undisputed facts that Jones not only failed to disclose his lawsuit on his 2015 proposed plan but also in his 2017 adopted plan.

> In 2016 - on the same day that Jones received a jury verdict against University defendants Jones' 2015 bankruptcy claim was voluntarily dismissed. Then in 2017, Jones again failed to include the information regarding this ongoing claim in that bankruptcy petition. These facts appear to support motive for concealing the cause of action from the bankruptcy court. Thus, this element is met because Jones has not met his burden of proving that his nondisclosure is inadvertent.

The record reveals without contest that the bankruptcies were filed and dismissed as the lawsuit against the IHL waxed and waned.

11

¶26.    Thus, there was ample evidence for the circuit court to conclude that Jones's nondisclosure was not inadvertent and that Jones notified the bankruptcy trustee only because the IHL forced his hand. Therefore, relying on our precedent, we find that the circuit court did not err by finding that judicial estoppel applied to Jones.

¶27.    In *Adams*, Dorothy Turner was a resident at Graceland's nursing home for several years. *Adams*, 208 So. 3d at 577. Turner died in December 2007, and Adams filed suit against Graceland in May 2008. *Id.*

¶28.    During Adams's deposition in August 2009, counsel for Graceland discovered that in August 2004, Adams had filed for Chapter 13 bankruptcy. *Id.* at 578. Adams's bankruptcy was fully discharged on March 31, 2009; however, in spite of her filing suit almost a year prior to her discharge, Adams did not inform the bankruptcy court of her suit nor did she amend her bankruptcy schedules to include the suit. *Id.*

¶29.    Upon learning of her prior bankruptcy and her failure to include the suit in her schedules prior to discharge, Graceland moved for summary judgment based on the doctrine of judicial estoppel. *Id.* Only then did Adams file a petition to reopen her bankruptcy proceeding and amend her schedules to list the suit as exempt personal property. *Id.* The bankruptcy trustee objected to the classification of the suit as exempt personal property, and the bankruptcy court agreed and sustained the objection. *Id.* Subsequently, Adams did amend her schedules to include the suit. *Id.*

¶30.    The circuit court entered an order staying the proceeding for the bankruptcy court to

determine whether Adams had a duty to disclose her suit as an asset of her bankruptcy estate. *Id.* The bankruptcy court's opinion was that "Adams had a continuing duty[2] throughout the pendency of her bankruptcy case to disclose the state law cause of action." *In re Adams*, 481 B.R. 854, 859 (Bankr. N.D. Miss. 2012). The lack of necessity for stays or referrals for instruction from bankruptcy courts has been dispensed. We adopt Presiding Judge Wilson's sound reasoning. *See Rogers*, 206 So. 3d at 1277-78.

¶31.    Ultimately, the circuit court granted Graceland's renewed motion for summary judgment based on the doctrine of judicial estoppel. *Adams*, 208 So. 3d at 578. Adams appealed, and the Court of Appeals rendered its decision in November 2015. See *supra* ¶ 12. The Court of Appeals concluded that the circuit court had erred by applying judicial estoppel because Adams did not "knowingly" take inconsistent positions in the circuit court and bankruptcy court, nor did she, viewing the evidence "in the light most favorably to Adams, . . . intend[ ] to conceal her claim from the bankruptcy court in order to reap a windfall by preventing her creditors from recovering any proceeds from a potential judgment."[3] *Id.* at 578. Graceland appealed that issue to this court, asserting that the Court of Appeals

_____

[2]The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one. The disclosure requirements pertains to potential causes of actions as well. *See* U.S.C. § 526(a)(1).

[3] We are unsure how the Court of Appeals knew that Adams did not "knowingly" take inconsistent positions. *Id.* An abuse of discretion review prevents an appellate court from taking sides. Without a firm conviction to overturn a trial judge's decision, then his or her decision stands, whether *vel non* this Court might find otherwise. *See Mccord v. Healthcare Recoveries, Inc.*, 960 So. 2d 399, 405 (Miss. 2007).

13

misapplied the law of judicial estoppel. *Id.*

¶32.    The circuit  court in *Adams* weighed arguments from both sides, assertions that Adams failure to disclose was inadvertent against Adams continuing duty to disclose and her being the sole beneficiary of her mother and the suit. *Id.* at 580. This Court held the trial court did not abuse its discretion by finding that Adams's oversight was of no moment and applying judicial estoppel to her claims. *Id.*

¶33.    Like *Adams*, Jones's unsupported inadvertence claim does not carry the day. All that was required was for Jones to have knowledge of his claims and a subsequent motivation to conceal the same. Those requirements were met to the satisfaction of the trial court. The applicable standard of review requires deference  to the trial court's decision.

¶34.    Jones attempted to demonstrate an issue of fact by citing his wife's affidavit in which she averred that she did not understand what needed to be disclosed in their bankruptcy. On summary judgment review, we, just like the trial judge, are required to take the nonmoving party's averments in the most favorable light. *See Karpinksy v. American Nat. Ins. Co.*, 109 So. 3d 84, 88 (Miss. 2013). "A debtor's non disclosure is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Kirk*, 973 So. 2d at 991. Jones's wife affidavit contests neither element. The trial court correctly found, based on *undisputed* facts, that Jones's wife affidavit did not dispute lack of knowledge of a claim or that a motive for concealing existed. We agree. Her affidavit was immaterial.

14

### III.    Summary Judgment

¶35.    "We review the grant or denial of a summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made." ***Karpinksy***, 109 So. 3d at 88.    Summary judgment is appropriate and "shall be rendered" if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c). Importantly, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, will be entered against him."  Miss. R. Civ. P. 56(e). In the case *sub judice*, this Court has found that the trial court correctly exercised its discretion by finding that Jones's claim was barred by judicial estoppel. As a result, no genuine dispute of material exists, and the IHL is entitled to judgment as a matter of law. Thus, the Court affirms the trial court's granting of the IHL's  motion for summary judgment.

### CONCLUSION

¶36.    Jones failed to meet his burden of showing his contradictory representations were inadvertent, failed to identify an abuse of discretion in the circuit court's decision, and failed to set forth a genuine dispute of material fact.  Because our examination of the record

15

revealed no genuine dispute of material fact, this Court affirms the judgment of the Claiborne County Circuit Court.

¶37.   **AFFIRMED.**

**COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, C.J., COLEMAN, BEAM AND CHAMBERLIN, JJ.; GRIFFIS, J., JOINS IN PART. KING, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**MAXWELL, JUSTICE, SPECIALLY CONCURRING:**

¶38.   This is a case in which judicial estoppel clearly should apply. It is indeed a no doubter.

¶39.   Jones had an active, pending lawsuit in the Claiborne County Circuit Court when he filed his Chapter 13 bankruptcy petition in Florida. Jones did not disclose this lawsuit as part of his Chapter 13 plan. In fact, when Jones prevailed at trial in Mississippi and was awarded $500,000 by the jury, Jones served his notice of voluntary dismissal of his bankruptcy *the very same day*. But when the trial court overturned that award, Jones once again sought Chapter 13 bankruptcy protection in Florida. And once again, Jones hid his lawsuit, which was pending appeal. Following that appeal, which permitted Jones to amend his complaint and continue to pursue his claim in Claiborne County Circuit Court, Jones failed to update his Chapter 13 bankruptcy plan. Only after the IHL moved for summary judgment based on judicial estoppel did Jones finally amend his bankruptcy plan to include the decade-old

16

litigation.

¶40.    By this point, all three elements of judicial estoppel had been met—an asserted legal position inconsistent with one previously taken during litigation, a court's acceptance of that previous position, and no inadvertence in taking the inconsistent position.  *Clark v. Neese*, 131 So. 3d 556, 560 (Miss. 2013) (citing *Kirk v. Pope*, 973 So. 2d 981, 991 (Miss. 2007)). So I agree with the majority that the trial judge was well within her discretion to apply judicial estoppel to Jones's amended complaint.

¶41.    That said, I write separately to explain two things: (1) that we are certainly not the only court to apply a bifurcated standard of review—indeed the majority of courts do—and (2) why the bankruptcy court's order permitting Jones to amend his Chapter 13 bankruptcy plan to add his pending claim against the IHL, while certainly relevant, is not controlling.

## I.    Standard of Review

¶42.    Many courts have wrestled with what standard to apply when the discretionary call to apply judicial estoppel leads to a grant of summary judgment as a matter of law.  And the majority of them have reached the same conclusion that we did in *Adams v. Graceland Care Center of Oxford, LLC*, 208 So. 3d 575, 579-80 (Miss. 2017)—that though the grant of summary judgment is reviewed de novo, the application of judicial estoppel is a discretionary call that must be reviewed for abuse of discretion.  *E.g.*, *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir. 2000) (reviewing the grant of summary judgment de novo but reviewing the underlying application of judicial estoppel for abuse of discretion); *Johnson v. Oregon*,

17

141 F.3d 1361, 1364 (9th Cir. 1998) (same); *Talavera v. Sch. Bd. of Palm Beach Cnty.*, 129 F.3d 1214, 1216 (11th Cir. 1997) (same); *see also*, *Anderson v. Seven Falls Co.*, 696 F. App'x 341, 344 (10th Cir. 2017) ("We review a district court's judicial estoppel analysis under an abuse of discretion standard, even at summary judgment." (citing *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1086 (10th Cir. 2013))).

¶43.    Moreover, the courts that review judicial-estoppel decisions for abuse of discretion—which is a large majority of our American appellate courts—do so based on sound reasoning.  For example, the First Circuit concluded almost twenty years ago that "[t]he fact that [a] case arises in the summary judgment context does not affect our decision to review the trial court's [judcial-estoppel] determination for abuse of discretion." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 31 (1st Cir. 2004).  The First Circuit was initially concerned that "there may seem at first blush to be some tension between the plenary review afforded to a summary judgment ruling and the deferential review of a threshold judicial estoppel determination . . . ." *Id.*  But the First Circuit realized that, practically speaking,  "that tension is more apparent than real." *Id.*

> Most evidentiary determinations are reviewed for abuse of discretion, and the same standard of review typically applies to threshold evidentiary determinations made in connection with summary judgment motions[.] Evidentiary rulings have the potential to shape and winnow the scope of the summary judgment inquiry, and a trial court should have as much leeway in dealing with those matters at the summary judgment stage as at trial.  As other courts have recognized, judicial estoppel fits neatly into this taxonomy.

*Id.* at 31-32 (citations omitted).

¶44.    Similarly, the D.C. Circuit has acknowledged that, though "[o]rdinarily, we review a district court's grant of summary judgment *de novo*[,] [a] large majority of the courts of appeals, heeding the Supreme Court's description of judicial estoppel as 'an equitable doctrine invoked by a court at its discretion,' ***New Hampshire v. Maine***, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001), have adopted an abuse-of-discretion standard rather than *de novo* review."  ***Marshall v. Honeywell Tech. Sys. Inc.***, 828 F.3d 923, 927 (D.C. Cir. 2016) (citation omitted).  The D.C. Circuit joined that majority, using common sense reasoning that "[*d*]*e novo* review would displace the discretion of the district court to apply judicial estoppel with the discretion of the appellate court to do so." ***Id.*** at 928.

¶45.    Closer to home, the Fifth Circuit has explained that, even when reviewing the grant of a motion for summary judgment, "because 'judicial estoppel is an equitable doctrine, and the decision whether to invoke it [is] within the court's discretion, we review for abuse of discretion' the lower court's decision to invoke it."  ***Kane v. Nat'l Union Fire Ins. Co.***, 535 F.3d 380, 384 (5th Cir. 2008) (quoting ***Browning Mfg. v. Mims*** (***In re Coastal Plains, Inc.***), 179 F.3d 197, 205 (5th Cir. 1999)).

¶46.    In other words, our settled bifurcated standard of review for when the application of judicial estoppel leads to summary judgment rests on a strong rationale and is consistent with other courts that take this same tactic.  This approach is also consistent with our review of other discretionary calls that lead to summary judgment—the most obvious example being when the trial court's discretionary decision to exclude certain evidence results in the

plaintiff's failure to meet its burden of production and defendant's entitlement to summary judgment as a matter of law. *E.g.*, ***Patterson v. Tibbs***, 60 So. 3d 742, 748 (Miss. 2011) (reviewing the trial court's exclusion of expert testimony for abuse of discretion, even though the plaintiff had appealed from an order granting summary judgment to the defendants).

¶47. Bottom line, the application of judicial estoppel is a discretionary call by the trial court. *New Hampshire*, 532 U.S. at 750. The fact that call is made in the context of summary judgment does not change its discretionary character. *Alt. Sys. Concepts*, 374 F.3d at 31. So there is no legitimate reason to abandon discretionary review under the guise of de novo review in an effort to begin substituting our own judgment about whether judicial estoppel should apply. *Marshall*, 828 F.3d at 928.

## II.     Amended Bankruptcy Schedule

¶48. My second reason for writing is to more specifically address Jones's argument that the Claiborne County Circuit Court erred by disregarding the order of the federal bankruptcy court in Florida permitting Jones to modify his plan and pursue his state-court claim to the benefit of his creditors. The majority briefly addresses this argument as an unsupported Supremacy Clause claim. Maj. Op. ¶¶ 17-18. But Jones's argument actually touches on an important question: What impact should a bankruptcy court's allowing a debtor either to reopen a Chapter 7 bankruptcy case or to amend a Chapter 13 plan to include a previously undisclosed unliquidated claim have on another court's application of judicial estoppel based on the initial nondisclosure of the claim?

20

¶49. Jones asserts that the Florida bankruptcy court's order allowing him to amend his bankruptcy schedule and pursue his state-court claim is *controlling*. He insists it prevents the Claiborne County Circuit Court from applying the equitable doctrine of judicial estoppel. But this is not so. It is the Claiborne County Circuit Court in which Jones has taken the contradictory position—that he does in fact have a claim against the IHL despite not disclosing it in prior bankruptcy petitions. So it is the Claiborne County Circuit Court that must determine if the doctrine of judicial estoppel applies. In fact, in *In re Dewberry*, the bankruptcy court, after allowing the debtor to reopen his Chapter 7 bankruptcy case for the administration of a previously undisclosed claim, held that the district court where the previously undisclosed claim was pending had "exclusive jurisdiction to conclude whether Debtor's conduct [in bankruptcy court] was so tainted as to warrant imposition of the rule [of judicial estoppel] in the case pending there." *In re Dewberry*, 266 B.R. 916, 920 (Bankr. S.D. Ga. 2001).

¶50. Similar to this case, in *Ah Quin v. County of Kauai Department of Transportation*, 733 F.3d 267, 269-70 (9th Cir. 2013), the debtor, who was pursuing a discrimination claim in federal district court that had been undisclosed in bankruptcy, faced a request to apply judicial estoppel and dismiss the discrimination suit. The debtor had sought and was granted by the bankruptcy court permission to reopen the bankruptcy case to add the pending lawsuit. *Id.* at 270. But the district court still applied judicial estoppel based on the nondisclosure and dismissed the pending suit. *Id.* On appeal, the Ninth Circuit did not chide the district court

21

for contradicting the bankruptcy court's order. Instead, it held that, in light of the reopening, the district court could not *presume* the prior nondisclosure was inadvertent. *Id.* at 273-77. And it directed the district court on remand to consider whether the facts supported a finding that the nondisclosure was not a mistake and that judicial estoppel should be applied. *Id.* at 279. It did not hold—as Jones asks us to do here—that judicial estoppel could not be applied by the trial court based on the bankruptcy court's decision to reopen.

¶51. That said, while a bankruptcy's court reopening a case or, as in this case, permitting amendment to a bankruptcy plan does not rob the trial court of jurisdiction to determine judicial estoppel, as *Ah Quin* illustrates, how the bankruptcy court treated the nondisclosure is certainly relevant to whether judicial estoppel should be applied—particular to the question of whether the nondisclosure was intentional or inadvertent. *Id.* at 276-77.

¶52. As the Eleventh Circuit has explained, courts "have justified applying judicial estoppel after a debtor omitted a claim from his bankruptcy disclosures as necessary to ensure full and honest disclosure to the bankruptcy courts and protect 'the effective functioning of the federal bankruptcy system.'" *Slater v. US Steel Corp.*, 871 F.3d 1174, 1186 (11th Cir. 2017) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), *overruled by Slater*, 871 F.3d at 1189). But in doing so, courts in the Eleventh Circuit in particular had "overlooked that bankruptcy courts do not necessarily view such omissions as establishing a debtor's intent to mislead the bankruptcy court." *Id.* This is because, until *Slater*, the Eleventh Circuit precedent allowed trial courts to *infer* a debtor's intent to misuse the courts

22

whenever a debtor knew about a civil claim but did not disclose it on his bankruptcy schedule. *Id.* at 1176.

¶53. The *Slater* Court overruled that precedent, instead directing that, before applying judicial estoppel, courts must "consider[] the individual plaintiff and the circumstances surrounding the nondisclosure." *Id.* at 1177. The Eleventh Circuit expressly rejected the approach, which it attributed to the Fifth Circuit, of rotely inferring that a plaintiff who omitted a claim on his bankruptcy schedule necessarily intended to manipulate the judicial system. *Id.* at 1189 n.18 (citing *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335-36 (5th Cir. 2004)). Instead, the Eleventh Circuit now follows the approach of the circuits that "have recognized that whether a plaintiff intended to conceal the claim to make a mockery of the judicial system requires consideration of more than just whether the plaintiff failed to disclose a claim." *Id.* The Eleventh Circuit remanded the judicial-estoppel issue to the district court, directing that court to "consider all the facts and circumstances of the case to determine whether the debtor had the requisite intent [to manipulate the judicial system]." *Id.* And part of looking to all the facts and circumstances includes "consider[ing] any findings or other actions by the bankruptcy court that might help in determining whether the debtor purposely intended to mislead the court and creditors." *Id.* at 1186. Indeed, the Eleventh Circuit saw "no good reason why, when determining whether a debtor intended to manipulate the judicial system [by not disclosing a claim], a district court should not consider

the bankruptcy court's treatment of the nondisclosure."[4]  *Id.* at 1187.

¶54.    Interestingly, post-*Slater*, a panel of the Fifth Circuit was asked to overrule Fifth Circuit precedent and instead adopt *Slater*'s more circumstance-specific approach.  *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 766 F. App'x 38, 43 n.3 (5th Cir. 2019).  In a per curiam opinion, the panel noted there was no need to overrule anything.  *Id.*  According to the panel, it was the Eleventh Circuit that had been "wrong" in how it had characterized Fifth Circuit law [in *Slater*] because Fifth Circuit "caselaw has *always* required courts to consider the facts before them in determining whether a debtor acted inadvertently."  *Id.* (emphasis added) (citing *Slater*, 871 F.3d at 1189).  The panel then offered up *Superior Crewboats* as an example.  In contrast to the Eleventh Circuit cases *Slater* overruled,[5] the Fifth Circuit in *Superior Crewboats* "did not draw an 'inference' from the debtors' omission that they had intended to 'manipulate the judicial system.'"  *Bias*, 766 F. App'x at 43 n.3 (quoting *Slater*, 871 F.3d at 1182).  Instead, the Fifth Circuit "considered the facts surrounding the debtors' nondisclosure, such as their knowledge of the claim; that they had initiated the suit 'only

---

    [4]  The *Slater* Court noted that "the bankruptcy court has tools of its own to punish a debtor who it determines purposefully tried to hide assets[,]" including revoking the bankruptcy discharge or even imprisonment for contempt.  *Slater*, 871 F.3d at 1186.  Thus, the Eleventh Circuit "reject[ed] the idea that encouraging a district court to blind itself to subsequent proceedings in the bankruptcy court, particularly the bankruptcy court's decision about whether to allow the debtor to amend his disclosures or reopen his bankruptcy case, better protects the bankruptcy system."  *Id.* at 1187.

    [5]  Specifically, *Slater* overruled *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003), and *Burnes*, 291 F.3d 1282, which had "endorsed an inference that a plaintiff who failed to disclose a lawsuit in a Chapter 7 bankruptcy intended to manipulate the judicial system because the omission was not inadvertent."  *Slater*, 871 F.3d at 1182.

24

months after filing for bankruptcy and requesting service of process during the pendency of the bankruptcy petition'; and their continued silence." *Id.* (quoting *Superior Crewboats*, 374 F.3d at 335). Thus, in the panel's view, the *Slater* Court "altered the Eleventh Circuit's caselaw to make it *more like* [Fifth Circuit] precedent, not less." *Id.* (emphasis added).

¶55. If this is really so, and if the *Bias* panel is correct, then a court may not mechanically infer bad motive in every circumstance where a debtor does not disclose a claim on his bankruptcy schedule. In this respect, in Mississippi, we have too narrowly cited Fifth Circuit precedent to suggest that anytime a debtor omits a claim or potential claim from his or her schedule, it must be for nefarious reasons, and judicial estoppel should be applied—with no further questions from the court.[6]

¶56. Instead, the question whether an omission of a claim or potential claim on a bankruptcy schedule was inadvertent or instead was motivated by an attempt to conceal is—and has always been—a fact-specific inquiry that cannot be inferred by the mere failure to disclose. *Bias*, 766 F. App'x at 43 n.3 (citing *Superior Crewboats*, 374 F.3d at 335)). Turning to these facts, Jones not only knew about his claim; he also had been actively litigating this claim in court *for years* before he filed bankruptcy. And his motive to conceal

---

[6] For example, our Court of Appeals, quoting the Fifth Circuit, has stated that "a debtor is deemed to have had 'knowledge' of her claim so long as she was aware 'of the facts giving rise to it.'" *Rogers v. Gulfside Casino P'ship*, 206 So. 3d 1274, 1280 (Miss. Ct. App. 2016) (quoting *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005). And this Court has cited *Love v. Tyson Foods, Inc.*, 677 F. 3d 258, 262 (5th Cir. 2012), for the proposition that the bad-motive subelement is "self-evident" when a debtor fails to disclose a claim or potential claim. *Adams*, 208 So. 3d at 581.

25

the claim is supported not just by his nondisclosure on his original bankruptcy schedule but also by his voluntary dismissal of his original bankruptcy petition when he thought he was getting a sizeable money judgment. When that judgment was reversed, he refiled for bankruptcy in Florida, again hiding his pending claim. It was only *after* the IHL asserted judicial estoppel in the Claiborne County Circuit Court and sought summary judgment that Jones petitioned the Florida bankruptcy court to amend his Chapter 13 schedule. True, the bankruptcy court did allow him to amend and pursue this action for the benefit of Jones's creditors. But this circumstances alone, while relevant, is insufficient to overcome Jones's egregious conduct and obvious attempt to manipulate the judicial system by simultaneously pursing a half-million-dollar lawsuit in Mississippi and a bankruptcy in Florida from which he tried to keep any potential recovery.

¶57. Thus, due to the circumstances surrounding Jones's nondisclosure—the fact his claim had been pending for years before he filed bankruptcy and his continued silence when he renewed and amended his bankruptcy petitions—the trial judge in this case had ample evidence to support a finding that Jones's nondisclosure was not inadvertent. Because applying judicial estoppel in these circumstances was well within the trial judge's discretion, I concur that the grant of summary judgment should be affirmed.

**RANDOLPH, C.J., COLEMAN, BEAM AND CHAMBERLIN, JJ., JOIN THIS OPINION. GRIFFIS, J., JOINS THIS OPINION IN PART.**

**GRIFFIS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶58. The only motion before the trial court and this Court is the defendants' motion for

26

summary judgment pursuant to Mississippi Rule of Civil Procedure 56(c). The defendants asserted that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The trial court agreed and granted a summary judgment.

¶59. The cases are legion that "[t]his Court will review a trial court's grant or denial of a motion for summary judgment de novo." *Venture, Inc. v. Harris*, 307 So. 3d 427, 431 (Miss. 2020) (internal quotation mark omitted) (quoting *Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1165 (Miss. 2011)). In a summary judgment, Rule 56(c) *requires* the trial court to view the evidence in the light most favorable to the party against whom the motion has been made (Jones) and requires the trial court first to determine whether there is a genuine issue of a material fact in dispute. If there are no material facts in dispute, the court then considers whether the moving party is entitled to a judgment as a matter of law. *Karpinsky v. Am. Nat'l. Ins. Co.*, 109 So. 3d 84, 88-89 (Miss. 2013). Here, based on my de novo review, I find that there is no genuine issue of material fact and that the defendants are entitled to a judgment as a matter of law. I therefore concur with the majority's decision to affirm the grant of summary judgment.

¶60. Despite this rather straightforward and simple appellate review, the majority finds that this is not a summary judgment to review under a de novo standard of review. Instead, the majority rules that an abuse-of-discretion standard of review is appropriate. I respectfully disagree. However, because I would affirm the grant of summary judgment under de novo

27

review, I see no reason to discuss the reasons I disagree with and dissent from the majority's statement of the standard of review. I reserve my discussion about the appropriate standard of review to a sister case also before the Court—***Saunders v. National Collegiate Athletic Association***, No. 2020-CA-01146-SCT.

**KITCHENS, P.J., JOINS THIS OPINION.**